66   393
174   453
66   393
183   277

THE STERLING HYDRAULIC COMPANY

*v.*

FITZALAN B. WILLIAMS. *et al.*

1.   PLEADING—*statement of implied covenants.*   Where a deed is set out *in hæc verba* in a pleading, the court will construe it, and take notice of any implied covenant that may appear therein; and the making of any such by the defendant is substantially averred, when the instrument is so set out, and it is alleged that the defendant executed the same.

Statement of the case.

2. EASEMENT. If a miller purchase a water privilege, or portion of water power, without any portion of the bed of the stream, he will gain an incorporeal hereditament or easement.

3. COVENANTS—*where they run with the land, or are assignable.* All covenants which relate to land and are for its benefit, run with it, and may be enforced by each successive assignee into whose hands it may come by conveyance or assignment. Thus, a covenant by a lessor, or by one of the owners of two adjacent premises, to supply the other owner or the lessee with water, will pass to a subsequent assignee from the covenantee, who may make it the foundation of a suit in his own name. And the capacity of covenants to run with incorporeal hereditaments is the same as it is with those which are corporeal.

4. Where the grantors, in a deed, conveyed certain lands, the description showing them to be connected with the use of a water power, and also granted a water power of a certain description with certain conditions, and the deed contained this provision: " to have and to hold all and singular the aforesaid easements, rights and privileges unto the said party of the second part, his heirs and assigns forever, as appurtenances belonging to the said above described pieces and parcels of land:" *Held,* that the water power and the implied covenants relating thereto would pass with the conveyance or transmission of the land by deed, devise or descent.

5. SAME—*implied—extent of.* Where defendant granted certain real estate connected with the use of a water power, reserving a right of way over the same to make necessary repairs, and also granted a water power equal to 500 inches of water under a six feet head, etc., with a condition that the grantee should contribute a certain proportion towards repairs: *Held,* that the law would not imply the utmost diligence on the part of the defendant to keep the works in repair in order to the protection of the property of the grantee, and in respect to the continuance to him of the water power to the extent granted, but that he was not bound to bestow any more than ordinary care and diligence in keeping the works in repair.

6. INSTRUCTIONS *improperly limited to the pleadings.* Where the defendant asked certain instructions to the effect that if the jury believed, from the evidence, a certain fact, he was not liable, it was held erroneous for the court to limit their application to a certain breach assigned, when if such fact were found, the defendant was not liable under any of the breaches.

APPEAL from the Circuit Court of Whiteside county.

This was an action of covenant by the appellees against the appellant. The breaches of the covenant assigned were: 1,

That the defendant did not keep its dam, race, bulkhead or ice-breaker in good and sufficient repair for the proper protection of the property, rights and privileges in the deed mentioned and conveyed, but on the contrary thereof then and there suffered and permitted the said dam, etc., to become defective, rotten, and out of repair, by means whereof said dam, etc., were destroyed and carried away by the water and ice running in the river, and the gates, flume, wheel-pit, wheels and machinery connected therewith of the plaintiffs were washed away, injured and destroyed by the water and ice. 2. That the defendant, for a long space of time, did not furnish and supply, nor permit the plaintiff to have the water power equal to 500 inches of water under a six feet head, etc.

Messrs. DINSMOOR & STAGER, for the appellant.

Messrs. WILSON, SACKETT & BEAN, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of covenant upon a certain deed executed by the Sterling Hydraulic Company, of Sterling, Ill., to David Williams and Brainard E. Orton.

The deed, after conveying two parcels of land by metes and bounds, the description showing them to be evidently connected with, and to be for the use of a water power, " expressly reserves to the company, its successors and assigns, a right of way for the passage of teams over and across said pieces and parcels of land, together with the right at all times to enter upon said premises, or any part of the same, for the purpose of all necessary repairs to said first parties' works;" it also grants, bargains and sells " a water power equal to five hundred (500) inches of water under a six feet head, said water to be used upon wheels constructed upon approved scientific and mechanical principles, with modern improvements, and said second party to pay towards the necessary expenses incurred by said first party in the support and

repairs of their said works in the proportion of one dollar to every forty dollars so expended," and it also grants "the right to use said bulkhead of said first party for. the purpose of supporting said shafting of said second party."

The clauses above quoted are principally the ones upon which the questions in the case arise. The declaration sets forth the deed *in hæc verba.*

The breaches assigned are, first, that the defendant did not keep its dam, race, bulkhead, or ice-breaker in good and sufficient repair, in consequence whereof they were washed out and carried away by the water and ice running in Rock river, and by reason thereof the gates, flume, wheel-pit, wheels and machinery connected therewith, of the plaintiffs, were washed out and carried away by such water and ice; and second, that from the 1st day of March, 1868, till the 1st day of December, 1868, the defendant did not nor would furnish or supply nor permit the plaintiffs to have the water power equal to five hundred inches of water under a six feet head.   There are no express covenants in the deed except in respect to the two pieces of land conveyed—there being as to them the usual covenants of seizin, freedom from incumbrances, and warranty.

It is first objected that there is no averment in the declaration of the making of any covenant by the defendant.   But as the deed is set out *in hæc verba,* the court will construe it, and take notice of any implied covenants that may appear therein, and the making of any such by the defendant is substantially averred when it is alleged that the defendant executed the deed.

It is again objected that the implied covenants, if any, in respect to the water power and keeping the works in repair, were personal covenants, or covenants in gross with David Williams and Brainard E. Orton, the grantees in the deed, and not assignable, and that they did not pass by devise to Fitzalan B. Williams, one of the plaintiffs in this suit, who

sues as devisee of David Williams, and that no action lies upon the covenants in the name of Fitzalan B. Williams.

The portion of water power acquired by the deed was an easement. "If a miller should purchase a water privilege or portion of water power, without any portion of the bed of the river, he, in that case would gain an incorporeal hereditament or easement." Ang. on Water Cours. sec. 144. The capacity of covenants to run with incorporeal hereditaments, is the same as it is with those which are corporeal. 1 Smith's Leading Cases, Hare and Wall. Notes, Part 1, 173. All covenants which relate to land, and are for its benefit, run with it, and may be enforced by each successive assignee into whose hands it may come by conveyance or assignment. Thus, a covenant by a lessor or by one of the owners of two adjacent premises, to supply the other owner or the lessee with water, will pass to a subsequent assignee from the covenantee, who may make it the foundation of a suit in his own name against the covenantor.    Ib. 203.

The deed contains this clause: "To have and to hold all and singular the aforesaid easements, rights and privileges, unto the said party of the second part, his heirs and assigns forever, as appurtenances belonging to said above described pieces and parcels of land."

We think there can be no question that this portion of water power and the covenants relating thereto, would pass with the conveyance or transmission of the land by deed, devise or descent.

Objection is taken to the giving of instructions for the plaintiffs, and to the modifying and refusing of instructions asked by the defendant.

The following were given for the plaintiffs :

"3.   Under the deed introduced in evidence in this case, it was the duty of the defendant to furnish a water power equal to five hundred inches of water under a six foot head, as the

dam was then constructed, at all times and under all circumstances if it was possible so to do by the exercise of the utmost human ingenuity and skill; and if the jury believe from the evidence that for any period of time since the delivery of the deed, the defendant has failed to furnish such water power, the burden of proof is on the defendant to show that it was not possible for human ingenuity and skill to have done it, or that the failure to do so was the fault of plaintiff, as stated in defendant's pleas.

" 4.    If the jury believe from the evidence that the defendant, at the time of the execution and delivery of the deed introduced in evidence by the plaintiffs, knew that Rock river was subject to ice-freshets, sometimes more and sometimes less severe and destructive in their character, and liable to injure their works, their not having provided in the deed that the company should not be liable for the loss of the water power granted to the plaintiffs occasioned by such freshets, the company would be liable for the damages occasioned by not furnishing such power, no matter how severe or destructive the freshet might be which prevented the company from furnishing such power, unless the same could not have been provided against by any reasonable human foresight and power."

" 8.    The court instructs the jury that under the deed introduced in evidence in this case it was the duty of the defendant to keep up in good repair all proper and necessary bulkheads and ice-breakers for the protection of the property of the plaintiffs; and if the jury believe from the evidence that the defendant failed or neglected to keep the bulkhead and ice-breaker in good repair, and that the property of the plaintiffs was carried out or injured by water and ice in consequence of such failure or neglect, then the defendant is liable and the jury should assess damages to the amount of the injury as proved."

Assuming the position of appellees' counsel to be correct, that under this deed there was an implied obligation on the

part of the grantor in respect to keeping in repair its works in order to the protection of the property of the grantees, and in respect to the continuance of the water power to them to the same extent as granted by the deed, we can by no means admit it to be one of so onerous a character as declared by these instructions. There is no express stipulation on the subject; and the only duty in the premises is such as the law requires. The precaution that the law requires is not the utmost that can be used. *The Europa*, 2 Eng. Law and Eq. 560. We conceive the defendant was bound to no more than to bestow ordinary care and diligence in the keeping in repair of its works. The evidence is, that in March, 1868, there occurred an extraordinary freshet in Rock river, on which the works of appellant and appellees were situated; that the force of the ice broke off the top of the ice-breaker, carried out the bulkhead, and carried away the appellees' flume and race-wall, and that by this means the appellees were prevented from using the water power granted. There was an abundant supply of water. No act of the defendant deprived the plaintiffs of the use of the water.

The bulkhead, which for some time had been out of repair, was not calculated to withstand an ice pressure, nor was it designed for protection against ice; the testimony of the engineers being that a bulkhead is intended to shut out water from the race for repairs.

As to whether there was any negligence in not keeping in repair the ice-breaker, the testimony was conflicting. If there was no lack of ordinary care and diligence in that respect, the defendant is not, in our judgment, responsible for this accident to the plaintiffs' flume and race-wall, nor for the interruption of the use of the water power occasioned thereby. The defendant was neither bound for the exercise of the utmost human ingenuity and skill, nor was it bound, at all events, to keep the bulkhead and ice-breaker in good repair, but only for the use of ordinary care and diligence to that end.

These instructions we regard as erroneous; and the defendant's refused instructions, which were in accordance with the views here expressed, should have been given.

The following instructions, without the words in italics, were asked by the defendant, which the court modified by adding the words in italics, and as thus modified gave them to the jury:

"7. If the jury believe, from the evidence, that, previous to and at the time of the disaster complained of, the defendants acted like prudent and cautious men in endeavoring to protect the property of the plaintiffs, and that for such purpose they used all the precautions which former years of experience in such matters indicated to be *or that might become* necessary, then the jury are instructed that the defendants are not liable for the loss or injury of the property of the plaintiffs *as set forth in their first assigned breach of covenant.*"

12. "Although the jury may believe that the injuries to plaintiffs' property occurred at a time when the defendant was guilty of negligence in not keeping their bulkhead, ice-breaker or other works in repair, nevertheless if the jury also believe, from the evidence, that the defendant could not have prevented such injury by the exercise of ordinary care, then the defendant is not liable for such injuries, *so far as the same relates to their flume and loss of wheel shafting and the expense of replacing them.*"

The modification restricts the application of the instructions to the first breach assigned for injury to the mill works of the plaintiffs, and denies their application to the second assignment of breach; whereas, if the accident which occurred to the plaintiffs' flume and race-wall was without the fault of the defendant as named in the instructions, the defendant would not have been liable under the second assignment of breach for the interruption of the use of the water power

during the time the effects of such accident were being repaired.

The instructions should have been given as asked, without the modification.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*