GEORGE W. FITCH

*v.*

LEVI P. JOHNSON.

*Filed at Ottawa June 21, 1882—Rehearing denied September Term, 1882.*

1. APPEALS—*reviewing controverted questions of fact.* By section 89 of the Practice act, this court is prohibited from examining controverted questions of fact, or considering any assignment of error calling in question the determination of the inferior or Appellate Courts upon any controverted questions of fact, in any case, except those named in the preceding section.

2. SAME—*what this court may consider.* Although a claim that the trial court, where a jury was dispensed with, erred in rendering judgment for the plaintiff, if based upon the alleged insufficiency of the evidence may not be considered by this court, yet if the claim be based upon the hypothesis that, admitting the facts charged in the declaration to be true, there is no right of recovery, this court may consider it, and whether the trial court erred in rendering judgment for the plaintiff upon the facts in the declaration, is directly presented by a motion in arrest of judgment.

3. PRACTICE—*mode of preserving questions of law on trial by court alone.* A party may protect himself against any erroneous view the judge may entertain with respect to the law governing a case where a jury has been dispensed with, by submitting to the court propositions of law as applicable to the facts, and thus have the court make a ruling upon the legal effect of any portion of the evidence, or with respect to any other matter or thing.

affecting the legal *status* of the cause, and thus avail himself in this court of any erroneous view of the law entertained by the trial court, and not corrected in the Appellate Court.

4. COVENANTS—*whether personal to the grantee, or run with the land.* A party owning a dam and other property conveyed a mill and the land on which it was situated, together with a water power equal to 2500 inches of water under a six feet head, covenanting to complete the dam, and forever to keep up and maintain at least a six feet dam, and all necessary piers, races, bulkheads and gates, so as to enable the grantee, his heirs and assigns, to fully use and enjoy the water granted, at all times, unless prevented by some unforeseen accident or casualty to the works of the grantor or his grantees, and that in case of damage being done to the works of the grantor by force of the water, or ice, or other cause, he would repair the same without unreasonable delay, and in case of neglect to do so for a period of thirty days, the grantee of the mill property, his heirs or assigns, might. make the necessary repairs after ten days' written notice, so as to enable him to enjoy the water power granted, or to prevent further damage from being done to the property of the grantee, and that the grantor should be liable in a suit for the amount so expended by the grantee, less his proportion of the expense, which was one-tenth part thereof: *Held,* that the covenant was one that run with the estate granted, and passed a right of action to any subsequent owner of the mill deriving title through the original grantee.

5. The conveyance of the mill and water power by a deed giving the right of entry upon the adjacent property under certain contingencies, for the purposes of repair, and the covenants therein on the part of the grantor to keep the dam, etc., in repair, conferred upon the grantee of the mill property and his assigns an easement in the adjacent premises, including the dam and hydraulic works, which thereby became appurtenant to the mill property, and passed with that property on its subsequent conveyance by the grantee.

6. SAME—*when it binds covenantor's assigns.* Where the owner of premises conveys a part of them, covenanting that the purchaser, his heirs and assigns, shall enjoy certain rights in and with respect to the premises retained by him, and also covenants in the conveyance to do and perform, from time to time, certain acts on the premises retained which are essential to the use and enjoyment of the purchased premises, such covenant, although regarded as a burden, will be deemed to run with the servient estate, and to subject the assignee thereof to its performance, and this burden is co-extensive with the estate granted to which it is made appurtenant.

7. SAME—*may be attached to and run with incorporeal hereditaments.* By the decided weight of authority covenants may run with incorporeal as well as corporeal hereditaments, and will when such intention appears.

8. Where the owner of mill property, and of a dam and hydraulic works on adjacent premises, conveys the mill and the ground on which it is situate, and grants certain water power with it from the head of water produced by

his dam, and covenants to keep his dam and other works in repair, so as to give the full enjoyment of the water power granted, and gives the grantee or his assigns the right to enter upon the lands retained by him, and make the necessary repairs to protect his right, upon certain contingencies, upon the failure of the grantor to do so, at the cost of the grantor or his assigns, this will create a servitude upon the premises retained, in favor of his grantee and assigns, and a subsequent purchaser of the servient estate will take it subject to the burden thus imposed upon it, and will be held personally responsible for a breach of the covenant.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. C. J. & C. C. JOHNSON, for the appellant:

Covenants are said to run with the land when either the liability for their performance or the right to enforce them passes to the assignee of the land itself. Wood's Landlord and Tenant, 499; 1 Smith's Leading Cases, 107; *Dorsey v. St. Louis, Alton and Terre Haute R. R. Co.* 58 Ill. 65; *Wiggins Ferry Co. v. Ohio and Mississippi Ry. Co.* 94 id. 83.

In order that a covenant may run with the land, its performance or non-performance must affect the nature, quality or value of the property granted or demised, independent of any collateral circumstances, or it must affect its mode of enjoyment. And see generally, 1 Smith's Leading Cases, 111–127; Wood's Landlord and Tenant, 499; Dicey's Parties to Actions, 44; *Taylor v. Owen*, 2 Blackf. 301; *Town of Plymouth v. Carver*, 16 Pick. 183; *Hurd v. Curtis*, 19 id. 459; *Wheelock v. Thayer*, 16 id. 68; Angell on Watercourses, sec. 258; Taylor's Landlord and Tenant, sec. 261; *Webb v. Russell*, 3 Term R. 393; *Wiggins Ferry Co. v. Ohio and Mississippi Ry. Co.* 94 Ill. 95.

An appurtenant is defined to be a thing used with, and related to or dependent upon, another thing more worthy, and agreeing in its nature and quality with the thing where-

unto it is dependent or appurtenant. 3 Washburn on Real Property, 340.

A thing corporeal can not be appurtenant to a thing corporeal, nor a thing incorporeal appurtenant to a thing incorporeal. *Harris* v. *Elliott*, 10 Pet. 54; *Leonard* v. *White*, 7 Mass. 6; *Jackson* v. *Hathaway*, 15 Johns. 454.

To make a covenant run with the land, in any case, there must be privity of estate between the parties. Wood's Landlord and Tenant, 499; Taylor's Landlord and Tenant, sec. 261; 1 Smith's Leading Cases, 125; Dicey on Parties to Actions, 44; Angell on Watercourses, secs. 257–258; *Hurd* v. *Curtis*, 19 Pick. 459; *Wheelock* v. *Thayer*, 16 Pick. 68.

To constitute privity of estate the position of the parties must be such as would have formerly given rise to the relation of tenure. 1 Greenleaf on Evidence, sec. 189; 1 Washburn on Real Property, 138.

Covenants which cast a burden on land do not run with the land. 1 Smith's Leading Cases, 110; Rawle on Covenants, 341; Dicey on Parties to Actions, 120; *Kepple* v. *Bailey*, 2 Mylne & K. 517.

The right which Church & Patterson and their assigns obtained by the deed to go upon the dam and works and make repairs, was a mere license, and gave them no interest in the land upon which the dam, etc., was located; nor would the conveyance of such a license carry a covenant running with the land. Angell on Watercourses, secs. 285, 286; Washburn on Easements, 6; *Vandenburg* v. *Van Bergen*, 13 Johns. 212; *Mumford* v. *Whitney*, 15 Wend. 381; *Wood* v. *Leadbitter*, 13 M. & W. 836; 2 American Leading Cases, 690.

Mr. F. Sackett, for the appellee:

A covenant is said to run with the land when either the liability for its performance or the right to enforce it passes to the assignee of the land itself. 1 Smith's Leading Cases,

(6th Am. ed.) 133; *Dorsey* v. *St. Louis, Alton and Terre Haute R. R. Co.* 58 Ill. 65; *Wiggins Ferry Co.* v. *Ohio and Mississippi Ry. Co.* 94 id. 83. See, also, Angell on Watercourses, sec. 258; *Hurd* v. *Curtis,* 19 Pick. 459; Taylor's Landlord and Tenant, 261.

Covenants may run with all the subordinate rights and privileges which, without being a part of the land, issue out of it, and can properly be viewed as incorporeal hereditaments. 1 Smith's Leading Cases, (6th Am. ed.) 165, 173, 211; 3 Washburn on Real Property, (3d ed.) 340; *Sterling Hydraulic Co.* v. *Williams et al.* 66 Ill. 393.

The right to enter upon the land of another, and there erect and maintain permanent structures, is an interest in the land. *Prescott* v. *White,* 21 Pick. 341; *Bronson* v. *Coffin,* 108 Mass. 675; *Morrill* v. *Markman,* 24 Mich. 279.

The same privity that exists between lessor and lessee exists between grantor and grantee when a grant is made of a subordinate interest in land. 1 Smith's Leading Cases, (6th Am. ed.) 165, 173, 177; *Holmes* v. *Buckley,* Prec. in Ch. 39, 1 Equity Cases, Abr. 27; *Rowbotham* v. *Wilson,* 6 E. & B. 593; *Prescott* v. *White,* 21 Pick. 341; *Morse* v. *Aldrich et al.* 19 id. 449; *Bronson* v. *Coffin,* 108 Mass. 675; *Batavia Mfg. Co.* v. *Newton Wagon Co.* 91 Ill. 230.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the First District, affirming a judgment for the sum of $1562.52, rendered by the circuit court of Whiteside county, at its March term, 1881, in favor of the plaintiff, in an action for breach of covenant, wherein Levi P. Johnson, the appellee, was plaintiff, and George W. Fitch, the appellant, and Pardon A. Brooks, were defendants.

The facts, as they substantially appear of record, are, that on the first day of May, 1873, the Lyndon Hydraulic and Manufacturing Company, a corporation organized under the

laws of this State, was the owner in fee of certain real estate at or near Lyndon, in Whiteside county, this State, lying on either side and extending across Rock river, upon which there were in the course of construction a dam across the river, a head race, and other hydraulic works connected therewith, designed to be used in operating a certain flouring mill then being built on a portion of the premises on the north side of the river; that the company, on the day last mentioned, by its deed of that date, containing full covenants of warranty, for the consideration of $20,000, conveyed the mill and the land upon which it is situated, together with a water power equal to 2500 inches of water under a six feet head, to Bradford C. Church and Samuel Patterson, which said deed contained, among others, the following express covenants on the part of the company:

"The party of the first part hereby covenants and agrees that it will complete and finish its dam and works in a good and substantial manner, according to the contract between the party of the first part and the original contractor, David B. Sears, and that it will forever keep up and maintain at least a six feet dam, and all necessary piers, races, bulkheads and gates, so as to enable the party of the second part, their heirs and assigns, to fully use and enjoy the water power herein above granted at all times, unless prevented by some unforeseen accident or casualty to the works of the party of the first part or its grantees. And the party of the first part further covenants and agrees, to and with the party of the second part, their heirs and assigns, that in case of any damage being done to the works of the party of the first part by force of the water or ice, or from any other cause, it will, without unreasonable delay, cause the same to be repaired; and in case the party of the first part shall fail or neglect to so make any such necessary repairs for a period of thirty days after the same might have been done, that then and in that case the party of the second part, or their heirs or assigns,

shall have the right, after having given to the party of the first part ten days' notice in writing, to enter upon the works of the party of the first part and make such necessary or reasonably necessary repairs upon the same, so as to enable the party of the second part to enjoy the water power hereby granted, or for the purpose of preventing further damage being done to the works or property of the party of the second part; and for the expenses incurred in so doing, the party of the first part shall be liable in a suit at law for the amount so expended by the party of the second part, less the party of the second part's proportion of such expenses as hereinafter covenanted and agreed to be paid by them."

The deed also contained a covenant on the part of the grantees to pay one-tenth of the cost of maintaining and keeping in repair the above mentioned hydraulic works. That the company, on the 9th day of September, 1874, conveyed to Martin M. Potter the dam and other hydraulic works, together with the land upon which they were constructed and located, who afterwards, on the 17th of January, 1870, conveyed the same to Fitch and Brooks; that appellant subsequently, on the 3d of July, 1879, conveyed all his interest in the premises to his son, Frank E. Fitch, the conveyance being recorded on the 19th; that on the 15th of April, 1875, Church and Patterson conveyed to appellee the flouring mill and lot of land upon which it is located, including the water power, and all rights and interests purchased by them from the company, as above stated; that in the month of March, 1879, the dam was partially destroyed by high water and ice; that on the 18th of June, 1879, appellee gave notice to Fitch and Brooks of the condition of the dam, and of his purpose to repair it if neglected by them; that after the expiration of the notice, some time in July, appellee commenced the required repairs and completed the same, at a cost of $1618.30, one-tenth of which he was bound, as assignee of Church and Patterson, to bear himself. The sub-

stance of the foregoing facts we regard as sufficiently averred in the declaration.

This case having been tried by the court, with the consent of the parties, without a jury, upon certain issues of fact, and there having been a general finding and judgment in favor of appellee, and such finding and judgment having been affirmed by the Appellate Court, the case, so far as those issues are concerned, must be regarded as conclusively settled against the appellant.

The legislature having declared, by the 89th section of the Practice act, "the Supreme Court shall reëxamine cases brought to it by appeal or writ of error as to questions of law only, and no assignment of error shall be allowed which shall call in question the determination of the inferior or Appellate Courts upon any controverted questions of fact in any case, excepting those enumerated in the preceding section," and as this case is not embraced within the excepted cases, it follows that all matters relating to the character, force and effect of the testimony, which counsel for appellant have discussed with so much earnestness and marked ability, are not before us at all, and by the above provision of the statute we are expressly forbidden to consider them. Such matters were eminently proper for the consideration of the Appellate Court, and they doubtless there received that careful and deliberate examination their importance demanded.

It remains only for us to inquire what, if any, errors of law are presented by the record for our consideration. To enable a party to protect himself against any erroneous view the judge may entertain with respect to the law governing a case, where a jury has been dispensed with, as was done in this case, the statute has wisely provided: "In all cases in any court of record of this State, if both parties shall agree, both matters of law and fact may be tried by the court; and upon such trial either party may, within such time as the court may require, submit to the court written propositions

to be held as law in the decision of the case, upon which the court shall write 'refused,' or 'held,' as he shall be of opinion is the law, or modify the same, to which either party may except, as to other opinions of the court." Under this provision of the statute it was clearly the right of counsel, and would have been highly proper, by means of such written propositions to have required the court trying the cause to make a ruling upon the legal effect of any portions of the evidence offered, or with respect to any other matter or thing affecting the legal *status* of the cause, and thus have availed themselves in this court of any erroneous view of the law entertained by the trial court, and not corrected in the Appellate Court. But on examination, the record shows nothing of this kind was done. Indeed, no act or ruling of the court which we are permitted to consider is claimed by appellant's counsel to be erroneous, except the rendering of the judgment, and even that claim, so far as it is based upon the alleged insufficiency of the evidence, we are not, as we have already seen, permitted to consider; but in so far as it is based upon the legal hypothesis that, admitting the facts charged in the declaration to be true, there is no right of recovery, we are. If, conceding the facts to be true in manner and form as charged in the declaration, there is in law no right of recovery, then the circuit court erred in rendering the judgment, and that error, not having been corrected in the Appellate Court, may be corrected here; and whether such error exists in fact is directly presented by appellant's motion in arrest of judgment.

Appellant claims that the covenant sued on was a mere personal covenant on the part of the company with Patterson and Church, and that the liability to perform it did not therefore devolve upon the assignee of the dam and hydraulic works, and that for the same reason the right to sue upon it did not pass to appellee as assignee of the mill property, or, more shortly stated, that the covenant in question does not

run with the land. If such is the true character of the covenant, it is hardly reasonable to suppose the parties so understood it, for surely no one capable of contracting would invest $20,000 in property that might on the next day be rendered almost valueless by a mere transfer of an adjacent estate, or by the sudden insolvency of its owner, which would necessitate such a transfer,—the very contingency which happened in this case. The relation between the two properties clearly shows that such could not have been the intention or understanding of the contracting parties. So far as their usefulness is concerned they are dependent on each other. The water power would be useless without the mill, and the mill could not be operated at all without the water power.

Again, on the one hand, no one except the owner of the hydraulic works, or some one acting under his license or authority, could lawfully perform the covenant to keep the works in repair, for every entry for the purpose of repairs by another would be a trespass. On the other hand, the covenant was of no value to the covenantee except in his character as owner of the mill, and if his right, as owner, to enforce the performance of it by action would not pass to his assignee, it would in effect be to deprive him of one of the most valuable incidents of all property, namely, the right and power of transfer, for certainly no one would want the property at any price without power to enforce the covenant. The mill without the motive power which the hydraulic works furnished to operate it, would certainly be of but little value. These, and other considerations of a similar character that might readily be suggested, leave but little, if any, doubt that it was the intention of the parties to bind their respective assignees as well as themselves, and we are of opinion they did so.

The conveyance of the mill and the water power by a deed giving the right of entry upon the adjacent property, under certain contingencies, for purposes of repair, and the cove-

nant therein on the part of the grantor to keep the dam,
etc., in repair, we regard as conferring upon the grantees of
the mill property and their assigns an easement in the adja-
cent premises, including the dam and hydraulic works, which
became, and is, appurtenant to the mill property, and hence
passed with it to appellee on his purchase from Patterson and
Church.    And we are of opinion, also, the burden of the
covenant to repair devolved upon the assignee of the servient
estate upon its transfer by the company, and that such
assignee or assignees, whether immediate or remote, are
personally liable thereon, in their character as owners of
such servient estate, so long as it remains in them,—or,
more shortly, we are of opinion the covenant runs with the
land, and it therefore follows, the declaration shows upon its
face a good cause of action.

While it is true the cases are not all in harmony on this
subject, yet we are of opinion that by the decided weight of
authority the doctrine that covenants run with incorporeal
as well as corporeal hereditaments is fully established, and
where the owner of certain premises conveys a part of them,
covenanting that the purchaser, his heirs and assigns, shall
enjoy certain permanent rights in and with respect to the
premises retained by the grantor, and also covenants in the
conveyance to do and perform, from time to time, certain
acts which are essential to the use and enjoyment of the
purchased premises, as was done in this case, such covenant,
although regarded as a burden, will be deemed to run with
the servient estate, and to subject the assignee thereof to its
performance.    The acts embraced within the covenant being
essential to the use and enjoyment of the purchased estate,
it must be assumed their performance was intended by the
parties to be co-extensive with the estate conveyed, which
was one of unlimited duration, and we are aware of no means
by which such intention can be made certainly effectual
except by holding, as we do, the covenant runs with the ser-

vient estate, and that the assignee thereof is personally liable thereon. The principle here announced is no new doctrine of this court. It is distinctly recognized in *Sterling Hydraulic Co.* v. *Williams et al.* 66 Ill. 393, *Wiggins Ferry Co.* v. *Ohio and Mississippi Ry. Co.* 94 id. 83, and also in *Batavia Mfg. Co.* v. *Newton Wagon Co.* 91 id. 230.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*