(No. 77-CC-2165-)

LEO S. DUGOSH and THERESE DUGOSH, Claimants, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 22, 1981.*

JOHN C. HEDRICH, for Claimants.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

This is a claim for crop loss resulting from the negligent failure of the State of Illinois to maintain drainage under and through the Illinois-Mississippi Canal.

A hearing was conducted before Commissioner Bruno P. Bernabei, who heard testimony of several witnesses, received evidence and the briefs and arguments of counsel. The Commissioner has duly filed his report, together with the transcript, exhibits and briefs now before us.

In 1894 the United States of America had condemned certain farm land in Bureau County for the construction

of the Illinois-Mississippi Canal. The canal was eighty feet wide at the water line and seven feet deep.

The pertinent part of the condemnation petition filed in U.S. District Court for the Northern District of Illinois alleged:

"That the United States will properly connect the tile drains now laid in said lands wherever the same are cut by said canal, carry the same under said canal and give the same a proper outlet on the south side thereof; so that after the completion of said canal, said lands will be as thoroughly drained as they are at the present time."

Claimants' land, then owned by a predecessor in title, was part of the land condemned. The natural drainage of the land was south toward the canal by means of a natural drainage ditch, which drained approximately two square miles of farm land; the water ultimately flowing into a creek known as Bureau Creek. The canal blocked this drainage. To correct this, so that Claimants' land would continue to drain properly, the United States laid two 48-inch drainage tubes under the canal at a point where the natural drainage ditch would empty into the tubes, thereby carrying the surface water under the canal. The United States obtained an easement from the property owner on the south side of the canal to construct a ditch carrying this water from the mouth of the tubes on the south side of the canal south into Bureau Creek. In addition, the United States laid 1900 feet of ten-inch tile along the north side of the canal to drain into the two tubes.

The property, specifically involved in this claim, is a twenty-one acre field, bought by Claimants in 1966, and bordering on the north bank of the canal. In 1967 claimants notified the Department of the Army Corps of Engineers that the tubes and the ditch south of the canal were plugged, and the Corps of Engineers did the necessary remedial work in 1968 to restore the drainage.

In 1970 the State of Illinois took title to the canal from the United States government.

In early 1972, the culverts under the canal again began to fill. The State of Illinois was notified that the drainage was blocked and failed to provide proper drainage. An award was made to the Claimants in *Dugosh v. The State of Illinois* 31 Ill. Ct. Cl. 493, for damage to their property during the years 1973 and 1974. The present claim is for damage because of flooding of Claimants' field for the years 1975, 1976 and 1977.

The issue presented is whether the State of Illinois connected the tile drains in the Claimants' land, carried them under the Illinois Mississippi Canal and gave them a proper outlet on the south side thereof, so that the Claimants' lands were as thoroughly drained as they were before the canal was constructed.

The Illinois-Mississippi Canal when built was, in effect, a public highway for transportation of barge traffic from Hennepin to the Mississippi River. Its construction disrupted the natural drainage in the area concerned. The United States government, however, by constructing the drainage facilities previously described, restored the drainage to its former condition and, according to the record, maintained these facilities as recently as 1967. The Respondent, State of Illinois, present owner of the canal, apparently refuses or is unable to keep the drainage structures in repair, taking the position that the Claimant, by clearing land, increased the amount of debris and the amount of water runoff.

In *St. Louis Railroad Co. v. Clauch* (1891), 41 Ill. App. 592, the facts were similar to the case at bar. The railroad was built across the natural ditch and culverts were placed under the railroad. The railroad failed to

keep the culvert cleaned out and plaintiff's land was flooded. The court held that to maintain such an obstruction was a violation of public duty by the railroad and an invasion of private rights, creating liability for damages to persons injured thereby.

The statement in the condemnation proceedings in the U.S. District Court, that the United States would properly connect tile drains wherever the same were cut by the canal and carry them under the canal and give them a proper outlet on the south side thereof so that after the completion of the canal, the lands would be as thoroughly drained as they were at the present time is a promise to the landowner. A promise is an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future. *American Law Institute, Restatement of Contracts*, Section 2. A promise or covenant to maintain tile and drainage running from one landowner to another is a covenant running with the land that runs to the successors in title of both the dominant and servient land. *Sterling Hydraulic Co. v. Williams* (1872), 66 Ill. 393; *Dorsey v. St. Louis A. & T.H.R. Co.* (1871), 58 Ill. 65.

The State of Illinois succeeded to the United States government's duty to maintain drainage through the canal. The right to drainage ran to the successive owners of the dominant land. The drainage was not maintained so that crops could be grown in a large portion of the Claimants' field during the normal crop production time of the year. The State of Illinois in cross-examination brought out that Claimant had removed some trees on the higher ground to the north in the natural drainage area. The State provided no witness to testify that the runoff water was increased or that soil erosion was increased by the land clearing. Their contention is rejected. The Claimant testified that where the trees were

cleared, that the land was relatively flat and that grass had been planted for permanent pasture on the cleared land, which would actually reduce erosion and the amount of runoff water. The Claimant further presented evidence that no trees were cut or removed on any slopes that would accelerate erosion.

It is found that in 1975 eleven acres of farm land was rendered unuseable for crop production at a fair rental value of $100 per acre, or $1,100. The loss of use of crop land for 1976 and 1977 was 21.9 acres at a fair rental value of $125 per acre, or $2,737.50. It is found that the fair rental value of the total acres rendered unuseable for the years 1975, 1976 and 1977 had a total fair rental value of $3,837.50.

Claimants have proved damages in the amount of $3,837.50 arising from the State's negligent maintenance of its drainage facilities under and bordering the Illinois-Mississippi Canal adjacent to Claimants' property.

Claimants are hereby awarded damages in the sum of Three Thousand Eight Hundred Thirty-Seven and 50/100 ($3,837.50) Dollars.