(No. 82-CC-033█

LEO S. DUGOSH and THERESE DUGOSH, Claimants, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 28, 1985.*

JOHN C. HEDRICH, for Claimants.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

This is a claim for crop loss allegedly resulting from the failure of the State of Illinois to maintain drainage under and through the Illinois-Mississippi Canal.

A hearing was held where evidence was received from testimony of witnesses and exhibits. Inspection of the site was made by the commissioner in the company of the parties and their attorneys. The parties have filed their briefs and the commissioner has duly filed his report.

In 1894, the United States of America had condemned certain farmland in Bureau County for the construction of the Illinois-Mississippi Canal. The canal was 80 feet wide at the waterline and seven feet deep.

The pertinent part of the condemnation petition filed in U.S. District Court for the Northern District of Illinois alleged:

"That the United States will properly connect the tile drains now laid in said lands wherever the same are cut by said canal, carry the same under said canal and give the same a proper outlet on the south side thereof; so that after the completion of said canal, said lands will be as thoroughly drained as they are at the present time."

Claimants' land, then owned by a predecessor in title, was part of the land condemned. The natural

drainage of the land was south toward the canal by means of a natural drainage ditch which drained approximately two square miles of farmland with the water ultimately flowing into a creek known as Bureau Creek. The canal blocked this drainage. To correct this, so that Claimants' land would continue to drain properly, the United States laid two 48-inch drainage tubes under the canal at a point where the natural drainage ditch would empty into the tubes, thereby carrying the surface water under the canal. These tubes were officially called Culvert #4. The United States obtained an easement from the property owner on the south side of the canal to construct a ditch carrying this water from the mouth of the tubes on the south side of the canal, south into Bureau Creek. In addition, the United States laid 1900 feet of 10-inch tile along the north side of the canal to drain into the two tubes.

The property specifically involved in this claim is a partially tillable 21-acre field bought by Claimants in 1966 and bordering on the north bank of the canal. In 1967, Claimants notified the Department of the Army Corps of Engineers that the tubes and the ditch south of the canal were plugged and the Corps of Engineers did the necessary remedial work in 1968 to restore the drainage.

The State of Illinois took title to the canal from the United States government in 1970. In early 1972, the culverts under the canal again began to fill. The State of Illinois was notified that the drainage structures were blocked and not providing proper drainage. An award was made to the Claimants in *Dugosh v. State* (1976), 31 Ill. Ct. Cl. 493, for damages to their property during the years 1973 and 1974. A further award was made to Claimants in *Dugosh v. State* (1981), 34 Ill. Ct. Cl. 117,

for damage to their property during the years 1975, 1976 and 1977. The present claim is for damage because of flooding of Claimants' field for the years 1978, 1979, 1980 and 1981.

The issue presented is whether the State of Illinois connected the tile drains in the Claimants' land, carried them under the Illinois-Mississippi Canal and gave them a proper outlet on the south side thereof, so that the Claimants' lands were as thoroughly drained as they were before the canal was constructed.

The Respondent contends that the site in question is in a flood plain and the land would be flooded during certain times of the year, even if the canal was not there. They further contend that the 10-inch field drain tile ran some water all year long.

The Claimants assert that although much of the land in the area was flooded by heavy spring rains, the land was farmable during the crop season. They contend that drainage was not proper because the outlet of the 10-inch field drainage tile was covered by mud which inhibited water flow, Culvert #4 was completely blocked, and a 48-inch tube installed by the State of Illinois was half full of dirt and debris.

The statement in the condemnation proceedings in the U.S. District Court, that the United States would properly connect tile drains wherever the same were cut by the canal and carry them under the canal and give them a proper outlet on the south side thereof, so that after the completion of the canal the lands would be as thoroughly drained as they were at the present time, is a promise to the landowner. A promise is an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future.

(*American Law Institute, Restatement of Contracts*, section 2.) A promise or covenant to maintain tile and drainage running from one landowner to another is a covenant running with the land that runs to the successors in title of both the dominant and servient land. *Sterling Hydraulic Co. v. Williams* (1872), 66 Ill. 393; *Dorsey v. St. Louis A. & T.H.R. Co.* (1871), 58 Ill. 65.

The State of Illinois succeeded to the United States government's duty to maintain drainage through the canal. The right to drainage ran to the successive owners of the dominant land. We find that the drainage was not maintained so that crops could be grown on a portion of the Claimants' field during the normal crop production time of the year.

The record indicates that Claimants lost the use of approximately seven acres of cropland during the years 1978 through 1981, both inclusive, and no more than seven acres. Accordingly, the Claimants are entitled to receive an award of $3,640.00 for the years 1978 through 1981, said award being arrived at by unrebutted testimony that the fair rental value for the years 1978 and 1979 was in the amount of $125 per acre, and for the years 1980 and 1981 was in the amount of $135 per acre.

It is hereby ordered that Claimants be, and hereby are, awarded the sum of $3,640.00.