BENJAMIN L. DORSEY

*v.*

THE ST. LOUIS, ALTON & TERRE HAUTE R. R. Co.

58 65
72a 549

1. COVENANTS—*real and personal, defined.* A covenant is said to run with the land, when either the liability for its performance or the right to enforce it passes to the assignee of the land itself; and to run with the reversion, when the liability to perform it or the right to enforce it passes to the assignee of the reversion.

2. SAME—*which run with the land.* The T. H. & A. R. R. Co. entered into an agreement with D, by which said company agreed, in consideration that he had conveyed to it certain premises, to make and maintain certain

5—58TH ILL.

improvements thereon; and soon after, said company conveyed its fran-
chises to the St. L., A. & T. H. R. R. Co. In an action of covenant on said
agreement, brought by D, against the assignee corporation, the declaration
averred, among other things, the failure and refusal on the part of both
companies to keep said agreement, as also that defendant purchased with
notice of such covenant. A general demurrer was interposed, which the
court below sustained, on the ground that the covenant was merely per-
sonal, and not, therefore, binding upon the defendant as assignee: *Held*,
that this was error; that D's grantee, being a corporation created for other
purposes than trade, could not convey the premises without authority so to
do from the legislature; that the covenant related to the land, and was,
from the relations of the parties, perpetual in its nature; and any authority
subsequently conferred on his grantee by the legislature, to convey its
franchises, was not intended to, and did not sever the covenant from the
land.

WRIT OF ERROR to the Circuit Court of Madison county;
the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. CHARLES P. WISE, for the plaintiff in error.

Messrs. WILEY & PARKER, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Plaintiff in error brought an action of covenant in the
Madison circuit court, against defendant in error, on this
instrument:

Whereas, Benjamin L. Dorsey, of the county of Madison
and State of Illinois, has this day sold and conveyed to the
Terre Haute and Alton Railroad Company, by deed bearing
even date herewith, a strip of land one hundred feet in width,
being fifty feet in width on each side of the centre line of the
said railroad, as the same has been surveyed and located upon
and over the said lands of the said Dorsey, in the county afore-
said; and, also, a certain piece of land described in said deed
by metes and bounds for a depot ground: Now, therefore, in
consideration of the conveyance of the land aforesaid, the said
Terre Haute & Alton Railroad Company hereby agrees to con-
struct and maintain a good and suitable fence upon each side
of the said railroad, on the line and bounds of the aforesaid

land, with proper cattle guards, and, also, two crossings and gates on the said land, at such places, northwardly of the said depot grounds, as the said Dorsey may designate; and, also, to construct a depot on the lands so as aforesaid conveyed by said Dorsey for that purpose, said Dorsey to have the right to join his fences to the fences which are to be built by said company.

*In Witness Whereof*, The Terre Haute & Alton Railroad Company, has hereunto affixed its corporate seal, and caused these presents to be signed by Simeon Ryder, [SEAL] its President, and attested by Levi Davis, its Secretary, at its office in the city of Alton, this 25th day of April, A. D. 1854.

SIMEON RYDER,
President of the Terre Haute & Alton Railroad Co.
Attest: LEVI DAVIS, Secretary.

Appellee demurred to the declaration, and the court held that it failed to disclose a cause of action. It is averred, and the demurrer admits it, that the Terre Haute & Alton Railroad Company, after the execution of this deed, conveyed the road, franchises and appurtenances, to the St. Louis, Alton & Terre Haute Railroad Company, the defendant in error. The breaches assigned, are, that the Terre Haute & Alton Railroad Company had failed and refused to construct and maintain the fences, &c., according to their covenant, and that defendant in error, since receiving the conveyance, has not performed and fulfilled the covenants contained in the deed, as grantee of the Terre Haute & Alton Railroad Company. It is also averred that defendant in error had notice of the covenants at the time it received the conveyance. Plaintiff in error contends that the covenants are real and run with the land, while defendant in error insists that the covenants are collateral and personal, and do not run with the land. This is the question presented for our consideration by this record.

A covenant is said to run with the land when either the liability for its performance or the right to enforce it, passes to the assignee of the land itself. A covenant is said to run with

the reversion when the liability to perform it or the right to enforce it, passes to the assignee of the reversion. These are the definitions usually given of covenants that inhere to the land and the reversion; and covenants contained in leases, by landlord and tenant, and their assignees, afford the greater part of the legal discussion on this question. But, inasmuch as at the common law such remedies, if they existed as to leases, were imperfect, in the 32d year of Henry the VIII, chap, 34, a law was adopted by the British Parliament to give, or at least to enlarge, the remedy. That act recites, "that by the common law, no stranger to any covenant could take advantage thereof, but only such as were parties or privies thereunto," and proceeded to enact, " that all lessees and grantees of lands, or other hereditaments, for a term of years, life or lives, their executors, administrators or assigns,. shall have like action and remedy against all persons and bodies politic, their heirs, successors and assigns, having any gift or grant of the King, or other person, of the reversion of said lands and hereditaments so letten, or any parcel thereof, for any condition or covenant expressed in the indentures of their leases, as the same lessees might have had against said lessors and grantors, their heirs and successors."

Thus it will be seen that much of the discussion of covenants contained in leases, has grown out of the provisions of this enactment, and hence decisions on that subject, under that statute, are not, by analogy, authority in other and different covenants real. The covenant of warranty seems to have had its origin in the common law from the feudal system. It originated from the fact that as that system imposed on the grantee the duties of tenure, it also bound the lord to the reciprocal obligation, either to protect his tenant in his fief, or to give him another, and this liability descended to the heir as long as he had lands of his ancestor to answer it. The warranty seems, in its origin, to have been without any express covenant, but arose from implication ; but subsequently, when a deed accompanied the gift, the word of feoffment, *dedi,* implied

a warranty.   From this liability of the lord to make good the gift to his vassal, and the liability descending to the heir who inherited his lands, the whole doctrine of covenants running with the land has grown up as a common law or statutory production.   The idea of covenants which inhere to and pass with the land, seems to have had its origin in the feudal constitution, although, simple as it was, the subsequent growth of the doctrine became, in time, intricate and highly abstruse, but in our country it has been divested of most of its technicalities, and in modern times it has been greatly simplified in Great Britain.

After the adoption of this statute, in the court of King's Bench, in Spencer's case, (Coke's Reports, part 5, page 15,) where a lessee covenanted by indenture for himself, his executors and administrators, that he, his executors or assigns, would build a brick wall upon a part of the premises demised, and the lessee afterwards assigned the term, it was resolved, among other things, that as the covenant did not in terms bind the assignee, but only the lessee, his executors and administrators, and as it related to a thing not in being when the demise was made, the assignee was not liable, as the law will not annex the covenant to a thing not in being.   But in case the lessee had covenanted for himself and his assigns, that they would make a new wall upon some part of the land demised, that, as it is to be done upon the land demised, it shall bind the assignee. And the reason assigned, is, that it is to be done on the premises, and the assignee is to take the benefit of the improvement, and he is bound by express words.   On the other hand, if a warranty be made to one, his heirs and assigns, by express words, the assignee shall have the benefit of the covenant, and shall have *warrantia charta*.   But if the thing to be done is merely collateral to the land, and does not touch or concern the premises demised, in any manner, the assignee shall not be charged, as, if the lessee covenant for himself and his assigns to build a house on other land of the lessor, not a part of the demised premises, the assignee is not

bound, as the covenant is collateral to the demised premises, and therefore the assignee is no more bound than any other stranger.

It was also held, that a lease of personal goods, containing a covenant that the lessee and his assigns would restore the goods at the end of the term, does not bind the assignee, the covenant being only personal; that a covenant to repair, runs with the land.

It is urged that these resolutions govern the case at bar, as the covenant is only for the grantee, and the successors and assigns are not expressly named in the covenant. If this covenant had been executed by an individual, there is no doubt that the principles announced in this case would govern, inasmuch as persons holding such property may sell it, or on their death it descends to heirs or devisees.

But the grantee in this case was a corporation that was created for other purposes than trade, and could not sell or dispose of these premises unless it were afterwards empowered by the legislature. It was not contemplated by either party that this property would ever be alienated by the grantee, as no such power then existed. The company covenanted that it would make the improvements and keep them in repair, and the law contemplated the perpetual existence of the corporation, and the effect of the covenant was that the repairs should be made in all future time, and had the company continued in existence, the liability to repair under its covenant would have been perpetual. Inasmuch as the company could not, under the law, sell the property, and as it would have reverted had the charter been forfeited, no one could have imagined that it could, in any event, be necessary that a clause should be inserted binding assignees for the performance of the covenants, and the law then, did not require it to secure the grantor in his covenants. The covenant was, from the relations of the parties, perpetual in its nature. Such was its legal effect, and plaintiff in error has done no act or given any consent that the covenant should cease.

We will not presume the legislature intended, even if they had the power, to deprive plaintiff in error of so valuable a legal vested right when they authorized the grantee to sell its road, franchises and appurtenances. We must presume that when the Terre Haute & Alton Railroad was authorized to sell, and defendant in error to purchase, all the rights of individuals, so far as they related to covenants and agreements to maintain fences and other means of safety to individuals and property, that had been entered into by the former, should continue and bind the latter. We can not suppose the legislature intended to do so unjust a thing as to deprive plaintiff in error both of his land and the covenant for the erection and maintenance of these improvements. And to hold that the Terre Haute & Alton road could sell so as to pass the title to this land, free from the covenant, and it cease to exist, would produce that result.

The covenant expresses that the conveyance is made in consideration of the erection and maintenance of the improvements. If, then, the Terre Haute & Alton road has ceased to exist, and the consideration for the conveyance has not been discharged, and as the declaration avers that defendant in error has purchased with notice, the latter must be held to discharge the consideration, or plaintiff in error should be permitted to file a bill for the rescission of his deed of conveyance. The covenant related to the land, and, in contemplation of law, inhered perpetually, and any authority conferred on the grantee to convey, did not, and could not, sever the covenant from the land. This necessarily results, from the fact that the first grantee had, when it received the conveyance, no power to make assignees, and hence could not covenant to bind persons that could not exist under the law as it then stood. We are, for these reasons, of opinion that the covenant inheres to the land, and that defendant in error is liable for any failure to perform it.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*