Doty *v.* Railroad.

# Doty *v.* Railroad.

## (*Knoxville.* November 18, 1899.)

COVENANTS. *Run with land and bind assignee.*

Purchasers, immediate and remote, of the properties, including rights of way, of a railroad company, and whether at forced or voluntary sale, are bound by its contract or covenant to run daily passenger trains along and over a portion of its right of way conveyed to the company, upon consideration that it would so run its trains. Such covenant runs with the land and binds assignees, although there is no express provision to that effect in the original contract. It is a continuing covenant, upon which the landowner and his vendees may sue the company and its assignees as often as breaches occur.

Cases cited and approved: 79 Ala., 569; 125 Ind., 19; 131 Ind., 413; 76 Ind., 488; 108 Mass., 175; 64 Ga., 492; 21 Ohio, 235; 58 Ill., 65; 27 Pa. St., 257; 6 Vt., 276; 82 Ga., 501; 64 N. C., 1; 9 Ohio St., 351.

Cited and distinguished: Bream *v.* Dickerson, 2 Hum., 128; Brooks *v.* Smith, 1 Shannon, 158; 44 Ohio St., 612; 4 N. Y., 136; 92 Cal., 95.

---

FROM HAMILTON.

---

. Appeal in error from Circuit Court of Hamilton County. FLOYD ESTILL, J.

PRITCHARD & SIZER for Doty.

SHEPHERD & FRIERSON for Railroad.

Doty *v.* Railroad.

WILKES, J. This is an action for breach of covenant contained in a deed made by plaintiff, Doty, to the Chattanooga Union Railway Company. The effort is to hold the assignee of that company upon the covenant as one running with land.

Under the charge of the trial Judge the jury found for the defendant assignee, and the plaintiff has appealed and assigned errors. The question, as submitted to this Court, is whether the covenant sued on is one which runs with the land and affects the transferee or is merely the personal covenant of the Chattanooga Union Railway Company, the original grantee. In 1889 this railway company desired to extend its lines, already partially constructed, through the lands of the plaintiff. An agreement was made between the railroad company and plaintiff, which, for the purposes of this suit, sufficiently appears from the recitals and covenants in the deed by plaintiff to the railroad company. These recitals are as follows:

"For and in consideration of $5 in hand paid, the receipt of which is hereby acknowledged, and an agreement by the grantee to run daily passenger trains on and along the right of way granted, I, D. M. Doty have bargained and sold unto the Chattanooga Union Railway Company for right of way for the road of said company, the following described pieces and parcels of land, . . . to have and to hold the same, together with all the

rights, privileges, erections, and appurtenances thereon or thereunto belonging to the said Chattanooga Union Railway Company, its successors, and assigns forever, with the promise that no other railway company shall be allowed to put its tracks on the right of way aforesaid, and if the same is abandoned by non use for six months the title will revert to me. . . . I warrant the title thereunto, and hereby bind myself, my heirs and representatives, to defend the same to the said Chattanooga Union Railway Company, its successors and assigns, against the lawful claims of all persons."

The deed is dated July 19, 1889. About three months thereafter the road was constructed and completed over the land, trains were put in operation, and a passenger service inaugurated. A station-house was built on the land, passenger trains were run once every hour each way, and passengers were received and discharged at Doty's, the station on the land, all trains stopping there. After some time the trains were decreased to three a day. After September, 1892, only mixed trains were operated, and only one per day, and in November, 1896, they ceased altogether to stop at this station, and ceased altogether to run passenger trains. In 1895 the railway company, having become insolvent, all its property was sold to one Merrill, and he afterwards conveyed to the Belt Railway Company, and this company leased to

the Alabama Great Southern Railroad Company, which undertook to operate the line, pay all expenses, and defend all suits arising out of the operation of the road, to pay all judgments recovered against it, keep the premises in repair, and return same when the lease expired. The Circuit Judge, in substance, told the jury that inasmuch as the railroad had not been built when Doty made the deed, the contract was personal and binding on the Chattanooga Union Railway Company only, and had no binding force upon its successors or assigns, and that as the covenant had been breached before the road was transferred to the parties against whom relief is sought as transferees, no recovery could be had against them. The plaintiff asks no judgment against the Chattanooga Union Railway Company, as it is insolvent, and the contest is with the transferees, upon the idea that the terms of the deed make a covenant upon the part of such transferees, and, as before stated, this is the only question this Court is requested to determine.

Very exhaustive and able briefs have been filed by counsel, and we are cited to a large number of cases, many of which we do not think apply to the real case under consideration.

We think if we look at the situation of the parties, and what was intended by the provisions in question, it will aid us in reaching the rights of the parties. The Chattanooga Union Railway

Company desired to obtain a right of way over the plaintiff's land. The plaintiff was willing to grant it, provided passenger service was furnished over the road. It appears that plaintiff also expected a station to be maintained upon the land or so near to it as to make the passenger service a convenience and benefit, but for some reason he seems to have omitted this feature from his written contract. It is manifest he cannot demand of any of the defendants anything more than that they shall run daily passenger trains over that right of way, as provided in the deed. Whatever benefit would accrue to plaintiff from this he is entitled to from his grantee, and more than this he cannot claim from any one. Now as to the original grantee, it acquired under this agreement, and the conveyance in which it is embodied, a right of way for railroad purposes, and for these purposes alone. This right granted to the railroad conferred upon it an easement over and upon the land—that is, a right to construct and lay its track over and upon the land and to operate it. Jones on Easements, Sec. 212. It is not provided how long this easement shall continue, except that if it is abandoned for six months it shall be extinguished, and the full title shall revest in or revert to the plaintiff as owner of the fee or reversion. Nor is it provided how long the plaintiff shall be entitled to have the daily passenger trains operated. It is plain that the running of the

train was to be and was the consideration for the right of user of the easement. Both were continuing rights, and they were mutually dependent upon each other. So long as the consideration was paid—that is, the trains were run—just so long was the road entitled to operate and enjoy its easement. It seems plain that if the consideration should fail by trains being discontinued, then the privilege purchased for this consideration of using the right of way should also fail. If the landowner had sold his land, he could not have conveyed it clear of this servitude so long as the railroad company kept up its part of the contract by furnishing the service. If the railroad company had sold its property, its assignee could only continue to operate the road by paying the consideration therefor, to wit, operating the train. A sale *in invitum* would carry with it the same results as to either the landowner or the easement owner. The obligations are continuing and mutual. Each is based upon the other, and incurred in view of the other. It might not have been a wise contract to make, but there is no law prohibiting unwise contracts. It may turn out the duty of running a passenger train will be a burden upon the road; it may be it will be but a barren benefit to the landowner, as he can only require it to run and not to stop.

We have examined the numerous cases cited by defendant's counsel. We do not think they are

applicable, and many cited by the plaintiff's counsel are also inapplicable as we view the case.

We are of opinion the principle involved is that passed upon by the Supreme Court of Alabama in *Gilmer* v. *Railroad,* 79 Ala., 569. In that case the plaintiff had conveyed to the Alabama and Florida Railroad Company a right of way through his land in consideration that the railroad would stop its passenger and freight trains opposite his house, and receive and discharge passengers and freight upon proper signal. The deed contained no language binding the assigns of the railroad company. The Mobile and Montgomery Railroad Company was the successor and assign of the grantee. The plaintiff contended that the covenant ran with the land and bound the assignee. This was demurred to. The Circuit Judge sustained the demurrer, and the Supreme Court reversed this ruling, and held that the assignee was bound, though not named in the deed or covenant, and that the obligation to maintain a flag station was a continuing one, for any breach of which any owner of the right of way would be liable. The obligation to receive and discharge passengers was a burden upon the easement, which was, in turn, a burden upon the land. In the case at bar the obligation to run a daily passenger train over this particular piece of road was a burden upon the easement or privilege of owning and operating the right of way. In both cases the service to be

rendered by the railroad was in the nature of rent for the use of the right of way, no other consideration being paid therefor. The road might have paid *"in solido"* in money or otherwise for this right of way once for all, but it stipulated to render certain service, that service to be continuous, and it is bound by its agreement. And so is any assignee or transferee bound to render the same service so long as it claims and enjoys the privilege, even though the word "assigns" is not used. The personal obligation of the original grantee could not extend beyond the time when his ownership ceased, as he would no longer be able to render the service without the road to render it upon, nor could the owner be required to look to such original grantee for any damages except such as accrued up to that time, and yet the obligation to render the service must still continue as a burden upon the easement or privilege of operating the road. So, if the contract was breached by the original grantee, the owner would have had his right of action at once. But this would not have exhausted his rights or remedies, for the obligations on each side are continuing, and a suit for breach at any time would, in a case like this, only cover the damages to that time; and as to the time subsequent to the breach, the obligation continues with successive rights of action for successive breaches. Even if we were mistaken in this view, still the breach by the

original grantee of the obligation to render the service did not put an end to that obligation and convert the landowner's right to merely a chose in action for the breach already committed, and even if it did, he might waive such right, or delay it, and bring the action at such time as he chose and against such parties as, at the time being, might be liable for such breach.

The consideration for this conveyance was not the building of the railroad, but it was the daily running of the trains. We might suppose the right of way occupied and the road in operation. The landowner applies for damages under the statute, and the road meets him with the proposition, "If you will forego your damages, we will stipulate to render certain continuous service." Would this not be a continuing obligation that would attach to the use of the easement? But the present case is stronger, for the railroad obtains the privilege of occupancy and operation before there is any actual occupancy, upon the consideration that for such occupancy and privilege of operation the road will render a continuing service. The case of *Midland Railway Co.* v. *Fisher,* 125 Ind., 19, is also in point. In that case a right of way was granted to a railroad company in consideration of its agreement to construct a fence on each side of the railroad when completed. The railroad was not built until three years after the deed was made. The grantee road mortgaged all its prop-

erty, including the right of way, and the mort-
gage was foreclosed, and the defendant purchased
and entered into possession. The land all passed
to another owner. No fence was built. In an
action for damages against the purchaser of the
road at foreclosure sale upon the agreement to
build, the Court held it liable, not because it was
bound for the debts of the old company, but be-
cause, by accepting and taking charge of the right
of way, it became obligated to build the fence,
and the Court said the purchaser could not be
permitted to enjoy the easement and refuse to
perform the agreement which created and conferred
it. It said, further, one who takes a privilege in
land to which a burden is annexed has no right
to assert a claim to the privilege and deny re-
sponsibility for the burden; a party who acquires
such a privilege acquires it subject to the condi-
tions and burdens bound up with it, and must,
if he asserts a right to the privilege, bear the
burdens which the contract creating the privilege
brought into existence.

The covenant is an integral part of the deed
upon which rests the rights of the appellant. The
deed which creates the asserted right discloses the
covenant which burdens the right. In accepting
the right under such a deed, and asserting a
claim to the privileges conferred by it, subsequent
grantees of the original covenantee become bound
to perform the agreement. The covenant passed

with the land. The easement which burdened the
fee was an incumbrance, and the party that took
the land took it subject to the incumbrance, but
in taking subject to the incumbrance of the ease-
ment that party acquired the benefit interwoven
with the incumbrance. Both the burden and the
benefit, the easement and the covenant, essentially
inhere in the land. One benefits the estate, the
other burdens it. The party who acquires the
estate necessarily acquires it with both the burden
and the benefits. He must submit to the one, but
he has a right to the other. In accord with this
holding are cited *Railroad* v. *Priest,* 131 Ind.,
413; *Hazlett* v. *Sinclair,* 76 Ind., 488; *Bronson*
v. *Coffin,* 108 Mass., 175; *Huston* v. *Railroad,* 21
Ohio, 235; *Carr* v. *Lowry,* 27 Pa. St., 257; *Kel-
logg* v. *Robinson,* 6 Vt., 276, and while there are
distinguishing features in each case, the general
principle involved is the same in each.

The case of the *Georgia Southern Railroad* v.
*Reeves,* 64 Ga. R., 492, was one where the grantor,
in consideration of $25 and of the building of
the railroad, conveyed to a company, its successors
and assigns, forever, in fee simple, the right of
way through his land, and added in the deed the
following words:

"It is hereby agreed and understood a depot
and station is to be located and given to said
Osborn Reeves on the land—a strip—above con-
veyed, to be permanently located for the benefit of

said Osborn Reeves, and his assigns, all to be used for the general purposes of the railroad company," and it was held that the railroad by accepting such deed, entered into a covenant to comply with its terms, and this covenant ran with the land and became obligatory upon any second company which became the purchaser under proper legal direction of all the rights, privileges, franchises and property of the former.

It has been held in a number of cases, and is not questioned, but that the acceptance of such a deed, though not signed by the grantee, binds such grantee to the stipulations and covenants in it. *Midland Railway Co.* v. *Fisher,* 125 Ind., and authorities there collated.

In *Dorsey* v. *Railroad,* 58 Ill., 65, it appears that a railroad entered into an agreement with Dorsey, in consideration of his conveyance of certain premises, that it would make and maintain certain fences and cattle guards at such places as Dorsey might designate, and soon thereafter it conveyed its franchises to another road. Dorsey brought an action on the covenant against the assignee, averring that it had notice of the agreement. A general demurrer was interposed and sustained upon the ground that the covenant was merely personal, and did not bind the assignee, and it was held that this was error, that the covenant related to the land, and was from the relations of the parties, perpetual in its nature,

and bound the assignee when the Legislature conferred upon it power to purchase the land.

Where an estate is conveyed for a specified purpose, the purpose marks the limit or boundary beyond which the estate conveyed cannot exist. *City of Macon* v. *Railroad,* 82 Ga., 501 (same case, *Am. & Eng. Railway Cases,* 462); 3 Elliott on Railroads, Secs. 939–941.

The Courts incline, when the words may be construed as a condition or covenant, to hold that they create a covenant, and not a forfeiture. 3 Elliott on Railroads, Sec. 945, and cases cited.

But if the words were construed to be a forfeiture, that might be waived, and the party aggrieved may have his damages. 3 Elliott on Railroads, Sec. 942, *et seq.*

It is said in 8th Am. & Eng. Enc. (new ed.), pages 138, 139, that "if a covenant relates to the interest or estate granted, so that its performance or nonperformance will affect the quality, value, or mode of enjoyment of the estate, it will run with the land and bind any one taking the estate with notice. See the cases there cited.

The Supreme Court of North Carolina held in *Norfleet* v. *Cromwell,* 64 N. C., 1, in substance, that the rule in *Spencer's case,* 5 Coke, 16, had no application to grants and covenants concerning easements, and said in effect that covenants creating easements run with the land as against assignees in fee when the intent to create them is

clear, the easement apparent, and the covenant consistent with public policy, and adds that covenants are the proper mode of creating such servitudes as consist in acts to be done by the owner of the servient estate.  The Court said:

"The canal has been cut; the defendant cannot, in the nature of things, release the benefits which he has acquired; the land cannot be restored to its former condition," and so the Court held the party in possession upon his covenant to repair. See to the same effect *Crawford* v. *Wetherbee,* 77 Wis., 419.

It is true in the North Carolina case the words, "heirs and assigns" were used with regard to both parties, and the canal was already in existence, and the case is cited only as to the question of the applicability of the rule in Spencer's case to easements.

In *Nasury* v. *Southworth,* 9 Ohio St., 351, this principle is announced, "that if the thing to be done upon the land, though not in existence at the time of the demise, would be of a permanent nature, connected with the use and enjoyment of the land, and beneficial to the assignee, an intent that it should run with the land and bind the assignee, shown by naming him in the deed, would be effectual." It was then held that the word "assigns" is not used in a technical sense and as the only word appropriate for the purpose, but

19 P—37

that any equivalent words manifesting an intent to
bind an assignee will suffice.

While we think this is the proper view to
take of the case, and these are the rules and
principles to be applied, we are not unmindful of
the authorities cited for the defendant, and which
it appears were persuasive if not controlling in
the Court below, and the very able presentation
of them in this Court calls for a notice of them.
We think they are clearly distinguishable from
the cases we have cited, and from the one at
bar. The contention of the defendant may well
be formulated in the following words from Tiede-
man on Real Property, Sec. 190: "Covenants which
relate to a subject-matter 'not *in esse,*' as for
the erection of a new building upon the premises,
do not run with the land so as to bind assignees
unless they are expressly named therein." See to
same effect Kerr on Real Property, Sec. 1218;
Washburn on Real Propedty, page 532; Taylor on
Landlord and Tenant, Sec. 260; *Spencer's case,* 5
Coke, 16 (same case, 1 Smith's Leading Cases,
138); *Petroleum Co.* v. *Weare,* 44 Ohio St., 612;
*Tallman* v. *Coffin,* 4 N. Y., 136; *Lyford* v. *Rail-
road,* 92 Cal., 95.

The last named case was decided under a Code
limiting covenants running with the land to those
conferring benefits on the land, and is not appli-
cable in this State.

We are referred to the cases of *Bream* v. *Dick-*

*erson,* 2 Hum., 128; *Brooks* v. *Smith,* 1 Shannon, 158; *Cronin* v. *Watkins,* 1 Tenn. Chy.; 125; *Hite* v. *Parks,* 2 Tenn. Chy., 373, as holding with defendant's contention.

In the first named case there was an agreement on part of the lessor to pay the lessee for improvements made during the lease, or that the lessee might take pay out of the rents. There was an assignment of the lease on the one hand and of the reversion on the other, and the Court treated the question as to whether the agreement or covenant to have pay for improvements passed to the assignee of the lease as against the assignee of the reversion. The Court said that there was no covenant on the part of the lessees to improve except at their option, and the covenant of the lessor was to pay if they were made and left standing at the expiration of the lease. It was added that it was difficult to conceive how a covenant to pay a pecuniary consideration for a house if the tenant should see proper to erect it, could be said to touch and concern the land so as to run with it. But the Court also held that the agreement was a personal covenant upon the theory of *Spencer's case,* 5 Coke, 16, where it was sought to charge the defendant, as assignee of the lessee, for failure to construct a brick wall upon the demised premises.

The Court said, among other things: "When the covenant extends to a thing *in esse,* parcel of the

demise, the thing to be done by force of the covenant is *quodam modo* annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee, although he be not bound by express words, but, when the covenant extends to a thing not in being at the time of the demise, it cannot be appurtenant or annexed to a thing which hath no being; as, if the lessee covenants to repair the house demised to him during the term, that is parcel of the contract, and extends to the support of the thing demised, and, therefore, is *quodam modo* annexed and appurtenant to the house, and shall bind the assignee, although he be not expressly named in the covenant. But in the case at bar the covenants concern a thing which was not *in esse* at the time of the demise made, but to be newly built thereafter, and therefore shall bind the covenator, his executors and administrators, and not the assignee, for the law will not annex the covenant to a thing which hath no being." *Bream* v. *Dickerson,* 2 Hum., 128.

The case of *Brooks* v. *Smith,* 1 Shannon's Cases, 162, approves this doctrine, stating it in these words: "A covenant to do something in existence at the time, as to repair the houses, cultivate the land in a particular manner, to reside on the premises, to let the lessor have free access to certain rooms in the house, runs with the land and binds the assignee even without the word 'assigns,' but if it be to erect something upon the

premises, such as a shop, house, machinery, or wall, that does not ·bind the assignees unless they are expressly named." Citing Addison on Contracts, 979.

The two cases cited from 1st and 2d Tenn. Chancery Reports, above, are in accord with this, holding, and all recognize the Spencer case. In other jurisdictions the Spencer case has been criti-, cized, if not denied.

Without questioning the correctness of this holding. upon the reason given and confined strictly to the, facts of the case, we think, there is a difference in the cases in this: In these cases there was, a covenant or agreement (so far as it was absolute and not optional) to do a certain specified thing—as, to build a house or wall or pay for improvements. There was no continuing and. daily accruing consideration or agreement on either side, there was no continuing obligation on either, as in this case. Here, from the very nature of the agreement, the burden must be borne by the party in possession for the time being and oper-; ating the road. The benefit must accrue to the; party in possession of the premises over which, the easement is granted. The service can be ren-; dered by no other, the benefit can be reaped by no other, except the parties in possession. It; is not a consideration capable of being reduced to an absolute money value. The land is burdened by the easement. This can only be offset

by the benefit to the servient estate, and this is a continuing burden and benefit.

But there is another view to take of the matter. The contract in this case on the part of the railroad is not to build the road, but to render the passenger service after it is built.

The contract upon the part of the landowner is to grant an easement. So far as this agreement goes there is no stipulation to build or put something new on the land, neither upon the servient estate, nor upon the dominant estate. While, of course, the trains cannot operate unless the road is first built, there is no stipulation for the latter, but only for the former, treating the road as already constructively built.

But as to the landowner, his contract is to give an easement over his land. He does this by the very instrument which stipulates for the service. Upon the execution of this agreement the road has an easement, before it does a lick of work on the land, or even enters upon it. There is no contract, therefore, to put anything new upon the land, but rather to use it in a certain manner, both parties acting upon the assumption that the road is already built.

This makes a case analogous to the provisions already referred to of cultivating or using the land in a certain manner, or residing on the premises, or allowing access to certain rooms in

Doty *v.* Railroad.

the house, in all of which cases the covenant runs with the land.

We think upon these grounds, and perhaps others that might be stated, there is a well-marked distinction between the cases, and that this case does not fall within the reason nor letter of the cases cited by defendant, but under those relied on by plaintiff and others herein cited and commented upon.

For the reasons stated, we are of opinion that the learned trial Judge was in error, and the judgment is reversed and cause remanded for a new trial. The appellee will pay costs of appeal.