## Cicalla *v.* Miller.

### (*Jackson.* June 29, 1900.)

1. LEASE. *Lessee's claim for permanent improvements.*

Under a lease, made by an executor under a power, stipulating to continue until the majority of the eldest or the marriage of some one of testator's three children to whom the leased premises were equally and jointly devised, but not to continue thereafter without the consent of the devisee coming of age or getting married, the claim of the lessee for the enhancing value of permanent improvements put upon the premises, made under a clause of the lease providing that he and his representatives should be paid out of testator's estate for permanent and valuable improvements put upon the land by him and remaining at the termination of the lease, to the extent that they enhanced its value, is a personal claim against the general estate which does not attach to the specific lands whose value was enhanced by the improvements, and for which the devisees who did not assent to the lease after majority or marriage, are not personally liable to the lessee or his assignee. (*Post, pp. 256–267.*)

Cases cited: Doty *v.* Railroad, 103 Tenn., 564; Bream *v.* Dickerson, 2 Hum., 126; Brooks *v.* Smith, 1 Shann. Cas., 158; Hite *v.* Park, 2 Tenn. Ch., 374; Cronin v. Watkins, 1 Tenn. Ch., 120.

2. SAME. *Same.*

And such lease terminates upon the majority or marriage of any one of the devisees, unless it is thereafter continued by the required consent of the parties, and the lessee's right to compensation for improvements attaches at that date. (*Post, pp. 264, 265.*)

3. SAME. *Same.*

The consent required to keep the lease alive after the majority or marriage of a devisee, and to make him a party to it and bind him personally, must be evidenced by some act of a more

Cicalla *v.* Miller.

pronounced character than the mere receipt by the devisee of ground rents from the lessee or his assignee. (*Post, pp. 265–267.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. GEO. GILLHAM, Sp. Ch.

EDGINGTON & EDGINGTON for Cicalla.

R. L. BARTELS, TURLEY & WRIGHT and LEE THORNTON for Miller.

WILKES, J. This is an ejectment bill to recover a certain premises described in a lease of B. Vaccaro, executor of Paul Cicalla, to Samuel Watson.

There is no contention that the lease has not expired, but a claim is set up for improvements made on the property during the existence of the lease, and a right is asserted to hold the possession of the property until the improvements are paid for.

The Court below was of opinion complainant was entitled to recover the property on and after May 20, 1897, the date she reached twenty-one years of age, and that defendant has no valid claim or lien for improvements made as against complainant, and defendant's cross bill was dis-

missed and a writ of possession was ordered to issue. The complainant was also decreed to be entitled to the rents of the property from the date mentioned, when she became of age, and a proper account was ordered, and defendant, Miller, appealed and has assigned errors.

The facts necessary to be stated are, that Paul Cicalla made his will, devising all his property to his three children, Aurelia, Parmelia, and Delida, and appointed Bartholomew Vaccaro his executor, with very broad powers. The will is substantially as follows:

"I give, bequeath, and devise unto my three children, Delida Cicalla, Parmelia Cicalla, and Aurelia Cicalla, all my property of every description whatever, real, personal, and mixed, choses in action, bank and gas stock, and every species of property possessed by me of every nature and description whatsoever, to be equally divided between my said three children, share and share alike.

"I hereby name Bartholomew Vaccaro as my executor, having full confidence in his ability and integrity, and request him to accept this trust.

"I hereby, in this my last will and testament, give him full authority to use, control, or dispose of my real estate for the benefit of my three above named children, as in his judgment

21 p—17

may seem best for the best interests of the estate and of my children."

Vaccaro, the trustee, made the following lease:

"This indenture of lease, made this the 10th day of January, A.D. 1882, between B. Vaccaro, trustee of the estate of Paul Cicalla, deceased, of the first part, and Samuel Watson, party of the second part, both of Memphis, Tennessee, witnesseth: That the party of the first part, as trustee under the will of Paul Cicalla, deceased, probated in Shelby County, Tennessee, hereby leases to the said Watson a lot of ground fronting on the south side of Union Street, Memphis, Tennessee, about forty-two feet front, and east of Wellington Street, adjoining the property of said Watson on the west side, running back south about four hundred and four (404) feet to the south boundary line, there being two tenement houses on the lot, numbered 233 and 235.

"Second: The duration of this lease is from the 1st of January, A.D. 1882, until either one of the devisees of Paul Cicalla, the testator, becomes of age or marries, it being provided in the will that the powers of the trustee over the estate shall cease, as to that devisee, on the happening of either event, and this lease is made under and subject to the powers of said will.

"Third: In the event of either devisee arriving

Cicalla *v.* Miller.

at age or marrying, and she and her husband consenting, then this lease is to be extended on the same terms until the second, or another, devisee arrives at age or marries, and in case, on the happening of that event, that both devisees and their husbands consent, then this lease is to be continued on the same terms until the last devisee arrives at age or marries.

"Fourth: The consideration of this lease is an annual rent of two hundred and fifteen dollars ($215), to be paid by the said Watson to the said trustee in quarterly installments, at the end of each quarter, and, in addition, the said Watson is to pay all taxes, State, county, and municipal, and on his failure to comply with his covenants at any time within a reasonable time, this lease may be forfeited by the party of the first part, or his successors, and all claims for improvements shall cease with the forfeiture.

"Fifth: The said Watson covenants to pay the rents and taxes aforesaid as they severally fall due, and to keep the property and all improvements and buildings and fences thereon in repair, and so leave them at the expiration of the lease.

"Sixth: As to all permanent and valuable improvements made and put upon said lot of ground by the said Watson, and standing thereon at the termination of this lease, shall be valued by disinterested parties, one of whom to be

Cicalla *v.* Miller.

chosen by the party of the first part, or his successors, one by the party of the second part, or his successors or representing him in estate, and the third chosen by these two, two being necessary to a decision, and to the extent that said improvements enhance the value of the property, the same shall be allowed and paid to the said Watson, or his representatives, by the estate of the said Paul Cicalla.

"Seventh: The alley on the east side of the lot, to the spring, is to be kept open so that the spring can be continued to be used as at present.

"Eighth: This lease is not to be in force until sanctioned by the Chancery Court of Shelby County.

"Ninth: Said B. Vaccaro only acts as trustee under will of Paul Cicalla, and is not to be held liable in an individual capacity by reason of any undertaking growing out of this lease.

"Given under our hands and seals the date above written.          B. VACCARO, *Trustee.*

"SAMUEL WATSON."

"Witness: H. C. KING, *Draftsman.*"

Complainant, on June 19, 1897, served the following notice on the defendant:

"MEMPHIS, TENN., June 19, 1897.

"*Austin Miller, Esq., City*:

"DEAR SIR—You are hereby notified to vacate

Cicalla *v.* Miller.

and turn over to me my property, on the south side of Union Street, in the city of Memphis, near the late residence of Samuel Watson, deceased.

"I came of age on the 20th day of May, 1897, and claim the right to the possession, and to the rents and profits of the property from and after that date.

"Please advise me, also, of the nature and extent of your claim upon the property. Yours truly, DELIDA CICALLA."

The real questions of controversy arise under the sixth clause of this lease and the facts hereinafter detailed, and, incidentally, the second and third clauses are also involved. Vaccaro filed a bill in the Chancery Court to have the will construed and to obtain directions in the execution of his trust, in 1879. The lease was made pending this suit. This lease was approved by the Chancery Court in January, 1882. Watson thereafter erected improvements on the lot, and afterwards executed a deed of trust on the leasehold and improvements to Myers, as trustee, to secure a debt to Menken. This debt not being paid at maturity, the trust was foreclosed, property sold, and Miller became the purchaser.

In the meantime Aurelia became of age, June 2, 1891, and married Aurelio Piaggio on the 18th of July, 1891, and thereupon these two filed

a bill against the other two sisters for partition, and on the 28th of March, 1892, the property was divided, and the lot leased to Watson was set apart to Delida. The second daughter, Parmelia, arrived at majority November 25, 1894, and married Lee Baccigalupo, but neither entered into any contract extending the lease, and say in their pleadings that, as a fact, they did not know the terms of the lease, but, according to their testimony, they did know of the lease and its terms, and concluded it was to the best interest of the parties the lease should continue and the property be assigned to Delida, the younger sister. The two older sisters received their share of the ground rents up to the time it was set apart to Delida. In the meantime they attempted to surcharge and falsify the accounts of Vaccaro, as trustee. The result of this litigation is reported in *Vaccaro* v. *Cicalla et al.,* 5th Pickle, 65, *et sequitur.* All ground rents and taxes were paid up to the time Delida attained her majority. A bill of review was filed by Delida seeking to review and set aside the decrees in the trust case of Vaccaro confirming the lease. This was dismissed by the Chancellor and his decree affirmed by this Court, April term, 1898. Soon after this the present bill was filed, and the only question is, whether complainant must pay for the improvements to the extent they have enhanced the value of the lot.

Miller filed a demurrer, which was overruled, and a cross bill, which was dismissed. Complainant was given full relief for the possession of the lot, and Miller was denied all relief or compensation for the improvements. No question is made of the power to make this lease, and the whole controversy is as to the rights of the parties thereunder, and turns upon the question whether the provisions in regard to the improvements and pay for the same ran with the land, and whether the provision for compensation for improvements can be enforced by an assignee of the lease against an assignee of the reversion.

It is further insisted that, even if it is not a covenant running with the land, the estate of Paul Cicalla is bound, and that Delida, being the sole party interested in that estate when she terminated the lease, is the representative of the estate, and must be held personally liable for the improvements, and, third, that in any event, having knowledge of the lease and having received benefits and continued the lease with knowledge, she is bound to pay. Attention is called to the use of the word "successors," used in the sixth section, in which a provision is made for fixing the value of the improvements, and it is argued that the term "successor," as applied to the trustee, means the party representing the estate, and not simply a successor as trustee, and that in this sense com-

Cicalla *v.* Miller.

plainant is the successor of Vaccaro, the trustee, and to the use of the same term in the fourth section of the lease.

Counsel also insists that much consideration must be given to the intention of the parties, and it was clearly the intention that the covenant should run with the land.

We have recently had occasion to consider very fully the question as to what covenants run with land and what do not, and to review the authorities in our own State and in others upon this question in the case of *Doty* v. *Railroad,* 103 Tenn., 564. Some distinctions between the cases are there drawn, but we are unable to distinguish the present case from the cases there commented on of *Bream* v. *Dickerson,* 2 Hum., 126; *Hite* v. *Park,* 2 Tenn. Ch., 374; *Cronin* v. *Watkins,* 1 Tenn. Ch., 120; *Brooks* v. *Smith,* 1 Shannon's Cases, 158.

It appears that it was entirely optional with the lessee, under the terms of the lease, whether he would put the improvements on the lot or not. He was not obligated by it to do so. The buildings were put on the lot after the lease was executed, and were not *in esse* at the time of its execution. This brings the case clearly within the facts and reasoning of the Court in the case of *Bream* v. *Dickerson,* 2 Hum., 126, and makes the agreement a personal one against the estate of Cicalla as such, and not one run-

ning with the land, and by its terms . expired
when the oldest daughter became of age. In or-
der to avail himself of his claim for improve-
ments, · the lessee should then have made his de-
mand, and the equities of the parties could have
been adjusted between the lessee and the trustee
representing the estate. We are satisfied that the
lease was not extended beyond the majority of
the oldest daughter by any express agreement, and
the most that can be said is that it was al-
lowed, after that, to continue so far as the use
of the property and payment of rents is con-
cerned. Nor can it be held that any lien was
created upon the property, if there was a ·valid
stipulation in the first instance to pay for the
improvements. This feature of the case is consid-
ered in *Hite* v. *Parks,* 2 Tenn. Ch., 375.

Nor can it be properly said that the complain-
ant represents the estate of Paul Cicalla in the
sense that she is individually bound for personal
covenants made by his executor or trustee. These
could not, under the will and terms of the
lease, bind the estate as such after the first
daughter arrived at age and the lease was there-
by terminated, and certainly not after a partition
of the property and allotment to each of her
separate share, in which it appears no notice
was taken nor allowance made for compensation
for the improvements by complainants in ·the al-
lotment and valuation of her share. The estate ·of

Cicalla *v.* Miller.

Paul Cicalla as such is not before the Court in this proceeding, nor can complainant be charged with the value of these improvements upon any general ground or idea of equity that, having knowledge of the lease and having received the benefits of its rents, she is bound to pay for the improvements. It must be noticed that she received no rents arising out of these improvements and because of them, but only the ground rents, which, under the lease, the lessee was bound to pay, even if no improvements had ever been made upon the property, and no allowance or valuation was made to her, in allotting her share, out of which to pay for these improvements, as her share was made $36,680, the same as the other shares. Complainant, after she came into separate possession, simply received ground rents, without regard to the improvements, and did not obligate herself to pay any compensation for these improvements, as between herself and her sisters, so that the question must, in order to do equity and carry out the obvious intention of all parties, be held to have been finally settled when the oldest daughter reached her majority. The words, "successors" and "representatives" of the trustee and lessee, as used in the lease, must be held to refer to successors and representatives who became such before the lease terminated, and we cannot doubt, under the terms of the lease and the facts as we find

Cicalla *v.* Miller.

them, that the lease, as such, terminated when the oldest girl became of age, and the rights of the parties were then fixed, and the claim for improvements not having been made at that time, when the entire estate of Cicalla was before the Court and undivided, could not be made afterward, when the property had been divided and no provision made to satisfy the claim for improvements.

We therefore see no error in the decree of the Court below, and it is affirmed, with costs, and the cause remanded for further proceedings.