LAWRENCE PURVIS, Appellant, *vs.* IRVING SHUMAN, Appellee.

*Opinion filed April 20, 1916—Rehearing denied June 8, 1916.*

1. LEASES—*test as to whether covenant runs with the land.* The test as to whether a covenant runs with the land or is merely personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted.  ·

2. SAME—*when benefit or obligation of a covenant passes with the ownership.* If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have' that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or the estate conveyed.

3. SAME—*when lessee may sue lessor's assignee for value of improvements not in esse when lease was made.* Where the owner of land leases the same for a particular purpose and covenants in the lease to pay the lessee, at the expiration of the lease, a certain per cent of the value of improvements to be constructed by the lessee and which are essential to the enjoyment of the property for the purpose for which it was leased, the lessee may sue the assignee of the reversion and recover on such covenant, even though the lease, which was recorded, does not, in terms, purport to be binding upon assigns. (*Fisher* v. *Deering,* 60 Ill. 114, and *Hansen* v. *Meyer,* 81 id. 321, explained.)

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Moultrie county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

FRANK M. HARBAUGH, EDWARD C. CRAIG, and DONALD B. CRAIG, (JAMES W. CRAIG, of counsel,) for appellant.

WHITAKER, WARD & PUGH, THOMPSON & McLAUGH-
LIN, and SIMMONS & IRVING, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

The appellant, Lawrence Purvis, filed his declaration in
this case in the circuit court of Moultrie county against the
appellee, Irving Shuman, grantee of the reversion in prem-
ises leased to the appellant by Sam T. Miller, to recover
from the appellee seventy-five per cent of the cost of im-
provements placed on the leased premises by virtue of a
covenant of the lessor contained in the lease. The court sus-
tained a demurrer to the declaration and rendered judgment
against the appellant for costs. An appeal was taken to the
Appellate Court for the Third District, where the judgment
was affirmed and a certificate of importance and a further
appeal were allowed.

The facts alleged in the declaration and admitted by the
demurrer are as follows: On April 9, 1907, Sam T. Mil-
ler, owner of the north half of the northwest quarter of the
southeast quarter of section 1, town 13, range 5, in Moul-
trie county, leased the same to the plaintiff from March 1,
1907, to March 1, 1912, at a rental of $200 per annum. It
was agreed that the plaintiff should not sub-let the premises
without the consent of the lessor, and the lease contained
the following provisions:

"It is further mutually agreed between the parties hereto
that the party of the second part has leased said premises as
an amusement park, and that the party of the second part is
entitled to all rents and privileges that he may be able to
receive from the parties desiring to use the same for a ball
park, race meetings or other similar forms of amusement.
It is further agreed between the parties hereto that any and
all improvements that may be put on said premises by the
party of the second part for the purpose of carrying out the

provisions of this lease will at the expiration of this lease be purchased by the party of the first part at seventy-five per cent of the original cost of said improvements. * * * The covenants herein shall extend to and be binding upon the heirs, executors and administrators of the parties to this lease."

The lease was recorded and the plaintiff took possession and constructed the improvements for the purpose of carrying out the provisions of the lease that the premises should be used for an amusement park, and the improvements cost $8255.95. During the term, on August 10, 1909, Sam T. Miller, the lessor, having platted the premises into lots, sold and conveyed a portion to the defendant and another portion to the defendant and D. L. Enslow, and on January 3, 1910, Enslow conveyed all his interest to the defendant. On March 1, 1912, the defendant notified the plaintiff that he was the owner of the premises and requested the plaintiff to remove the improvements. The plaintiff refused to comply with the request and demanded from the defendant seventy-five per cent of the original cost of the improvements, which the defendant refused to pay. Afterward the defendant obtained a judgment against Sam T. Miller, the lessor, caused an execution to be issued and levied upon the improvements as the property of Miller and sold them by virtue of the execution.

The Appellate Court was of the opinion that, the improvements not being in existence at the time the lease was executed, the covenant of Miller to pay at the termination of the lease seventy-five per cent of their original cost was personal and collateral to the demise and did not run with the land so as to bind the grantee of the lessor, under the decision in *Spencer's case,* 5 Coke, 16, (1 Smith's L. C. 145,) and subsequent cases following that one. The decision of this case will turn upon the question whether that view of the law was correct.

The statutory provision giving lessees a right of action against grantees of the reversion is section 15 of chapter 80 of the Revised Statutes of 1874, relating to landlord and tenant, and is as follows: "The lessees of any lands, their assigns or personal representatives, shall have the same remedy, by action or otherwise, against the lessor, his grantees, assignees or his or their representatives, for the breach of any agreement in such lease, as such lessee might have had against his immediate lessor: *Provided,* this section shall have no application to the covenants against incumbrances, or relating to the title or possession of the premises demised." The previous statute, included among those adopted as the law of this State, was enacted in the thirty-second year of the reign of Henry VIII. (Stat. 32 Henry VIII, c. 34.) The reason for the enactment of that statute was that the monasteries and other religious and ecclesiastical houses had been dissolved and their lands had come to the possession of the king, who distributed them to the lords. Much of the lands was subject to leases when they fell into the hands of the king, and the monks had inserted in the leases various covenants and provisions for their benefit and advantage. At the common law no person could take the benefit of any covenant or condition except such as were parties or privies thereto, so that the grantees of the king could not enforce the covenants in the leases. These things were recited in the preamble, and the statute was enacted to give to the grantees of the king the same remedies that the original lessors might have had. Section 1 of the act provided that the grantees of the king should have the same advantages, benefits and remedies as the lessors might have had. Section 2 was added, purporting to create rights in lessees which they already had so far as covenants running with the land were concerned, probably to give the statute the appearance of providing for the rights of tenants as well as of landlords. (2 Sugden on

273 — 19

Vendors and Purchasers, 247.) The benefit of covenants relating to the land entered into by the lessor passed to the assignee of the lessee, for though no contract.had been made between the lessor and assignee individually, yet as the latter became the tenant of the former a privity of estate arose between them, by virtue of which the covenants running with the land entered into when the lease was granted became mutually binding and might be enforced by the one against the other. (Williams on Real Property, 397.) At the common law, upon the grant of a reversion an attornment was necessary by which the tenant agreed to become the tenant of the new lord, since the lord could not grant the services of his tenant by deed without his consent, the relation between landlord and tenant and the services of the tenant being personal. (Sheppard's Touchstone, 255.) That section provided that all lessees should have the same rights and remedies against the grantees of the reversion as they might have had against the lessors, and section 15 of our statute is a substantial re-enactment of section 2 of the former statute.

It is earnestly contended that our statute is broader in its terms than section 2 of the statute of Henry VIII, and in one respect it seems to have been so regarded by this court. (*Fisher* v. *Deering,* 60 Ill. 114.) Although the statute of Henry VIII purported to give to grantees of the reversion a right of entry for non-payment of rent and the remedies which the lessors might have had or enjoyed, it was still held that the assignee of the reversion could not recover rent until there was an attornment but afterward could recover in respect to privity of estate and contract. The necessity of an attornment was dispensed with by the act of 4 and 5 Anne (c. 16) in England, but that statute was not one of the statutes adopted by this State, and this court held that an attornment was still necessary to enable the grantee of the reversion to recover rent. In *Barnes* v.

*Northern Trust Co.* 169 Ill. 112, the decision in *Fisher* v. *Deering* that even under the statute of Henry VIII an attornment was necessary was stated, and it was held that section 14 of the Landlord and Tenant act had dispensed with the necessity of an attornment on account of the general language of that section. The language of section 15 is equally general and purports in general terms to give to the lessee every right of action that he would have had against the lessor, but it is no more general in its terms than the second section of the statute of Henry VIII, and if that statute was limited in its operation to covenants which run with the land and did not include such covenants as are personal and collateral, section 15 must receive the same interpretation and has not enlarged the rights or remedies of lessees.

The construction of the statute of Henry VIII has generally been considered as determined in *Spencer's case, supra,* in which Spencer and his wife brought an action of covenant against Clark on a covenant contained in a lease made by the plaintiffs to S., in which S. covenanted to build a brick wall on a part of the land demised. The covenant did not purport to bind the assigns of S., who assigned his term to J., and J. to the defendant. Sir Edward Coke reported seven resolutions of the judges concerning covenants, which of them would run with the land and which of them are collateral and do not go with the land, where the assignee shall be bound without naming him and where not, and where he shall be bound although he be expressly named and where not. The first resolution was as follows: "When the covenant doth extend to the thing *in esse,* parcel of the demise, the thing to be done by force of the covenant is *quodam modo* annexed and appurtenant to the thing demised and shall go with the land and shall bind the assignee although he be not bounden by express word; but when the covenant doth extend to a thing which is not in being at the time of the demise made, the same cannot be

appurtenant or annexed to a thing which hath no being, as, if the lessee covenanteth to repair the houses demised to him during the term the same is parcel of the contract and extendeth to the support of the thing demised, and therefore is *quodam modo* annexed and appurtenant to houses and shall bind the assignee although he is not bound expressly by the covenant. But in the case at bar the covenant doth concern a thing which was not *in esse* at the time of the demise made but to be newly built after, and therefore shall bind the covenantor, his executors or administrators, and not the assignee, for the law will not annex the covenant to a thing which hath no being." The second was: "It was resolved in this case if the lessee had covenanted for him and his assigns that they would make a new wall upon some part of the thing demised, that forasmuch as it is to be done upon the land demised that it should bind the assignee, for, although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words."

It is contended that the statute was not construed in *Spencer's case,* both because it was not mentioned but mainly because it was wholly inapplicable to the facts of the case. The case was decided in the twenty-fifth year of Elizabeth,—more than forty years after the passage of the statute,—and the statute was not mentioned. It is also true that the case did not involve the statute because it was a suit by the lessor and the statute did not purport to enlarge the rights of lessors. As to covenants of a nature to run with the land, the assignee of the lessee was bound by the covenants of the lessee and the right of the lessor to take advantage of them did not depend upon the statute, the purpose of which was to give rights to grantees of reversions so that they might take the same advantage of covenants and conditions as their grantors might. While the decision in *Spencer's case* was not dependent upon the statute and

no mention made of it, nevertheless it is a necessary deduction from the decision that if the lessor did not have the right to enforce the covenant against the assignee of his lessee his grantee could not have done so by virtue of the statute, which only purported to give the same right of action to the grantee of the reversion as the lessor had, so that a rule was actually established for the application of the statute. The decision as reported by Lord Coke was that no covenant would run with the land so as to bind assigns unless it related to something *in esse* at the time the lease was executed. Perhaps no decision has caused more comment and controversy than that one and the correctness of the report has been disputed. In *Minshull* v. *Oakes,* 2 H. & N. 793, the court of exchequer expressed the opinion that the rule was not founded on any reason and suggested that *Spencer's case* was decided the other way. In the other report referred to of the same case by Moore, (p. 159,) the decision of the court was given as follows: "Notwithstanding that covenants lack words [assigns] yet each by acceptance of possession has made himself subject to all covenants concerning the land but not to collateral covenants, and covenants of reparations and building of walls or houses are covenants inherent to the lands, with which the assigns, without special words, shall be charged." The court of exchequer directed attention to the circumstance that the resolutions were never acted on and that according to Moore the decision was to the contrary, as was the decision in *Smith* v. *Arnold,* 3 Salk. 4, and the declaration of the court in *Bally* v. *Wells,* 3 Wils. C. P. 25, although the word "assigns" appeared in the covenant in that case. In *Minshull* v. *Oakes, supra,* a covenant to repair the messuage and all other erections and buildings which should or might be erected during the term was held to run with the land, which was at least a modification of the first resolution in *Spencer's case.* When Lord Coke was dismissed from his office he was ordered by the council to revise his

book of reports, which was said to contain many extravagant opinions, but *Spencer's case* as reported by him has so often been cited as stating the law, sometimes without any consideration and sometimes because it was an established rule which ought not to be changed by the courts, that it must be regarded as law in any case to which it is directly applicable. *Thompson* v. *Rose,* 8 Cow. 266; *Ovington Bros. Co.* v. *Henshaw,* 93 N. Y. Supp. 380; *Brewer* v. *Marshall,* 18 N. J. Eq. 337; *Willcox* v. *Kehoe,* 124 Ga. 484; *Cicalla* v. *Miller,* 105 Tenn. 255; *Lynn* v. *Mt. Savage Iron Co.* 34 Md. 603; *Dewar* v. *Goodman,* 1 K. B. 94.

According to the first resolution in *Spencer's case,* if the covenant relates to a thing *in esse,* parcel of the demise, and which directly touches or concerns the thing demised, it binds the assignee although he be not named; and by the second resolution, if the covenant relates to a thing not *in esse* but the thing is to be done upon the land demised, the assignee, if named, will be bound by the covenant, but not otherwise. The distinction has not been regarded as founded in reason but the rule has been considered an artificial and arbitrary one, from which the courts have always endeavored to escape if any distinction could be found for that purpose, (*Bald Eagle Valley Railroad Co.* v. *Nittany Railroad Co.* 171 Pa. St. 284,) and it has been said that the use of the word "assigns" as a technical word never was essential to the running of a covenant with the land at the common law, and there never was ground for a rational distinction between the assignee named and not named as to things not *in esse. Sexauer* v. *Wilson,* 136 Iowa, 357; 15 Ann. Cas. 54; 7 R. C. L. 1101.

The test whether a covenant runs with the land or is merely personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the

ownership, but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or estate conveyed. An illustration of the rule is found in *Wiggins Ferry Co.* v. *Ohio and Mississippi Railway Co.* 94 Ill. 83. In that case the Wiggins Ferry Company conveyed to a railroad company rights and easements in two parcels of ground and the railroad company covenanted to employ the ferry company to transport across the Mississippi river persons and property brought to the river upon the railroad or to be transported on the railroad. The Ohio and Mississippi Railway Company purchased the railroad property and the suit was for a breach of the covenant. The court said that in order that a covenant may run with the land its performance or nonperformance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment. The covenant having nothing to do with the two parcels of land in which the easement was granted was held to be personal. It makes no difference whatever as to the question whether a covenant runs with the land and may be enforced against the grantee, whether the method of enforcement is by an action at law or in equity. Equity may give the thing itself and therefore furnish a more complete and adequate remedy than an action at law in which damages may be recovered, but the method of enforcement has no relation to the rights of the parties. In *Gibson* v. *Holden,* 115 Ill. 199, the court quoted with approval from the notes to *Spencer's case* in Smith's Leading Cases the following: "Whether a covenant will or will not run with the land does not so much depend on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied, for if this be the case every successive assignee of the land will be entitled to enforce the covenant." In *Spencer's case* the building of the wall does not

appear to have been for the purpose of rendering the premises more beneficial or convenient to the occupant or to enable him to use and enjoy the land demised, but in *Easterby* v. *Sampson*, 9 B. & C. 505, where an undivided one-third part of certain mines was leased and the lease contained a covenant by the lessee that he would build a new smelting mill and keep it in repair for working the mines, the covenant was held to bind the assignees although not expressly named.

In *Fitch* v. *Johnson*, 104 Ill. 111, a corporation owning a fee in real estate on either side and extending across Rock river, upon which the construction of a dam had been commenced designed to be used in operating a flour mill, conveyed the mill and land upon which it was situated, together with certain water power, and in the deed covenanted to complete and finish the dam and works in a good and substantial manner according to a certain contract and to forever keep up and maintain at least a six-foot dam, to enable the grantees, their heirs and assigns, to use and enjoy the water power. The corporation conveyed the dam and other hydraulic works, together with the land upon which they were constructed, and it was held that the covenant was not a mere personal one on the part of the corporation but its burden devolved upon the grantees. The dam was not completed and *in esse* when the conveyance containing the covenants was executed, and no importance was attached to any questions whether assigns were named or not. The principal consideration was that the mill without the motive power would be of no value to the owner.

In *Dorsey* v. *St. Louis, Alton and Terre Haute Railroad Co.* 58 Ill. 65, a railroad company entered into an agreement, in consideration of a conveyance to it, that it would in the future construct and maintain a fence, with proper cattle-guards, two crossings and gates, and a depot on the lands, and afterward conveyed its property to the St. Louis, Alton and Terre Haute Railroad Company. The suit was

an action of covenant by the grantor against the assignee of the covenantor. The circuit court sustained a demurrer and the judgment was reversed by this court. The court referred to the first two resolutions in *Spencer's case,* and said they would control if the covenant had been executed by an individual, but as the corporation, when the covenant was entered into, was not authorized to convey its property the law did not require a clause binding assignees to secure the grantor in his covenants; that the covenant related to the land and in contemplation of the law inhered perpetually, and any authority conferred on the grantee to convey did not and could not sever the covenant from the land. The decision, while recognizing the rule in *Spencer's case* where it could not be avoided, enforced the covenant to effectuate the intention of the parties, but if, as stated, the covenant related to the land and in contemplation of the law inhered perpetually, it came within the definition of one which would run with the land.

In the case of *Hansen v. Meyer,* 81 Ill. 321, the suit was brought to recover damages for the breach of a covenant of the lessor to buy from the lessee, at a reasonable price, counters and shelving to be put in a store room on the first floor of a hotel building by the lessee. The court cited *Spencer's case,* and held that the grantee of the lessor was not bound because the counters and shelving were not *in esse* and had not yet become a part of the land when the lease was made. The appellant claimed a right to maintain the action under section 15 of our statute before referred to, but the court declined to consider that question because the statute was enacted after the lease was executed. It does not appear, however, that there was any restriction upon the use of the premises which required counters and shelving or that they were necessary to the enjoyment of the leasehold estate. The court, therefore, did not consider that question and the case came exactly within the first resolution in *Spencer's case.*

Neither the *Hansen case* nor *Spencer's case* is authority for the doctrine that if the lessee is restricted to a particular use of the lands demised, requiring improvements without which the land could not be used for the special purpose, a covenant relating to such improvements does not run with the land and bind assigns not expressly named. The covenant in this case did directly affect the mode of enjoying the leasehold estate which could not be otherwise enjoyed. Surely such a covenant is annexed to the land itself and the privity of estate which is the foundation of the running of covenants with the land is present. The improvements, when made, would not only tend to the support of the thing demised but would be essential to its use. The provisions of the lease amounted to an express covenant not to use the premises for any other purpose than as an amusement park. The naked land without the improvements could not be used for that purpose, and the lessee agreed to create the very thing which would enable him to use the land for the specified purpose. Stalls, paddocks, seats for the people, stands for the judges, fences with gates, offices for the sale of tickets, and other improvements, were absolutely essential to effect the purpose of the lease and to give the lessee the benefit of it. The grantee of Miller unquestionably had a right to enforce the covenant of the lease that the premises should be used for an amusement park, and having the benefit of the covenant the burden and benefit ran together with the land. The defendant, as grantee of the reversion, might have enforced against an assignee of the plaintiff the provision of the lease that the demised premises should be used for an amusement park, and such use necessitated the making of the improvements. The mutual covenants related to the manner of use and enjoyment of the premises and were inherent in the demise and not personal or collateral. Whether there was ever any rational ground for a distinction between things which are or are not *in esse* when the covenant is made where they do

not concern the use and enjoyment of the demised premises, there certainly is none where the covenant directly concerns such use and enjoyment.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*